STATE of Indiana, INDIANA CIVIL RIGHTS COMMISSION, in its own right and on behalf of Joseph C. Belzer and Theresa Wright, Appellants (Plaintiffs Below),

v.

INDIANAPOLIS NEWSPAPERS, INC., Unknown Directors of Indianapolis Newspapers, Inc., A.H.M. Graves Company, Inc., Unknown Directors of A.H.M. Graves Company, Inc., Sherry Hoyt, Shirley Morphey and Jacqueline D. Baker, Appellees (Defendants Below).

No. 49S04–9907–CV–371.

Supreme Court of Indiana.

Sept. 30, 1999.

Rehearing Denied Dec. 15, 1999.

Jacquelyn Thompson, Indianapolis, Indiana, Attorney for Appellants.

Jan M. Carroll, Mark J. Dinsmore, Indianapolis, Indiana, Attorneys for Appellees Indianapolis Newspapers, Inc.

Karen I. Brogan, Indianapolis, Indiana, Attorney for Appellee A.H.M. Graves Company, Inc.

Brian J. Zaiger, Noblesville, Indiana, Attorneys for Appellee Jacqueline D. Baker.

## ON PETITION TO TRANSFER

BOEHM, Justice.

The Indiana Civil Rights Law provides that the Commission "shall" file its petition in civil court within thirty days after a proper election by a party to have the claim decided in a civil action. We hold that a petition filed by the Commission after that time must be dismissed.

## Factual and Procedural Background

Jacqueline Baker owned a rental house in the Broad Ripple area of Indianapolis. She hired A.H.M. Graves Company to manage the rental property and instructed Graves to rent to tenants with no children. Graves prepared an advertisement which ran in the Indianapolis Star from January to March of 1994 and specified the desire for no children.

On January 31, 1994, Joseph Belzer responded to the ad and was told that the house would not be rented to anyone with children. At that time Belzer was living with Theresa Wright and her eleven-year-old daughter, Krystal. A week later, Belzer filed an administrative complaint alleging discrimination based on familial status with the Department of Housing and Urban Development. In due course this complaint, which named Baker, Graves, and Indianapolis Newspapers, Inc. (INI), owner of the Indianapolis Star,[1] was referred to the Indiana Civil Rights Commission under 42 U.S.C. § 3610(f)(1).

On April 12, 1996, the Commission issued its notice of findings stating that there was evidence to support the charge of discrimination based on familial status in violation of Indiana Code § 22–9.5–5–1. On April 19, Baker filed a notice of election to have the issue decided in a civil action pursuant to Indiana Code § 22–9.5–6–12.[2] Seventy days later, on June 28, 1996, the Commission filed a complaint in Marion County Superior Court on behalf of Belzer, Wright, and itself against Baker, Graves, and INI, adding as defendants

---

1. The original complaint filed by Belzer listed Graves, two women in Graves' office, the Indianapolis Star, and the owner of the property as parties against whom the complaint was filed. The complaint was subsequently amended to include INI, Baker, and Wright.

2. On May 22, INI also filed a notice of election and Graves filed its notice one day later. However, the parties appear to agree that if the statute imposes any time limits Baker's election governs the date by which the Commission must file.

several individuals associated with both Graves and INI.[3]

The trial court granted the defendants' motion to dismiss. The Court of Appeals affirmed in part and reversed in part, holding that (1) the statutory time limit for filing in a court was not mandatory, (2) Belzer had standing to sue, and (3) the Commission had failed to amend its complaint correctly, requiring the dismissal of Wright as a claimant. *See Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 702 N.E.2d 370 (Ind.Ct.App.1998).

INI sought transfer, challenging two aspects of the Court of Appeal's decision. First, INI contends that Belzer has no standing to contest the discriminatory practices in this case and therefore the Commission has no claim on his behalf. Second, INI contends that the complaint must be dismissed because of the Commission's failure to comply with the thirty day filing provision contained in Indiana Code § 22–9.5–6–13. Although we agree with the Commission that Belzer has standing under the Civil Rights Law, we affirm the trial court's dismissal of the complaint for failure to meet the thirty day filing requirement.

### Standard of Review

■ The trial court granted INI's motion to dismiss. In reviewing a motion to dismiss, the appellate court looks at the complaint in the light most favorable to the plaintiffs, with every inference drawn in their favor, to determine if there is any set of allegations under which the plaintiffs could be granted relief. *See Ratliff v. Cohn*, 693 N.E.2d 530, 534 (Ind.1998); *Cram v. Howell*, 680 N.E.2d 1096, 1096 (Ind.1997).

### I. Belzer's Standing to Bring Suit

■ INI first claims that Belzer does not have standing because Belzer was merely living with Wright and her minor child and that relationship does not constitute familial status under Indiana Code § 22–9.5–1–2. The Court of Appeals held that Belzer had standing because he was an "aggrieved person" as defined by the Indiana Civil Rights Law. *See Indianapolis Newspapers, Inc.*, 702 N.E.2d at 379–80. Standing is defined as having "sufficient stake in an otherwise justiciable controversy to obtain judicial · resolution of that controversy." BLACK'S LAW DICTIONARY 1405 (6th ed.1990). In order to have standing, "the party challenging the law must show adequate injury or the immediate danger of sustaining some injury." *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995).

Discrimination due to familial status is defined in Indiana Code § 22–9.5–1–2. Under that section, a person is a "subject" of a discriminatory act due to familial status if that person is discriminated against because the person is pregnant, or living with a person under eighteen whom the person is a parent of, has custody of, or permission to reside with, or if the person is trying to obtain custody of someone under eighteen. Belzer does not meet any of these criteria, but he contends that he was nonetheless aggrieved by the discrimination against Wright because she lived with a person under eighteen.

Indiana Code § 22–9.5–6–1(c) states that any "aggrieved person" may file a complaint with the Commission for the alleged discrimination. An "aggrieved person" is defined in Indiana Code § 22–9.5–2–2 as "any person who: (1) claims to have been injured by a discriminatory housing prac-

---

**3.** Under Indiana Code § 22–9.5–8.1–1, the Commission may file an action in its own right if there is "reasonable cause to believe that: (1) a person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article; or (2) a person has been denied any right granted by this article and that denial raises an issue of general public importance." The Commission must bring an action "on behalf of" an aggrieved individual pursuant to Indiana Code § 22–9.5–6–13 if any person involved in the case files an election. In this case, the Commission brought claims both on behalf of Belzer and Wright and in its own right.

tice; or (2) believes that the person will be injured by a discriminatory housing practice that is about to occur." Indiana Code § 22–9.5–6–12 allows a "complainant, a respondent, or an aggrieved person" to elect to proceed in civil court. A complainant is defined in Indiana Code § 22–9–1–3(n)(1) as "any individual ... personally aggrieved by a discriminatory practice...."

The issue of standing as an aggrieved person was addressed earlier this year in *Indiana Civil Rights Commission v. Alder.* See 714 N.E.2d 632 (Ind.1999). In that case, Larry Stovall, an African–American, occasionally stayed at the mobile home of Jodie Jackson. Jackson's landlord attempted to evict her, and eventually caused her to move, because the landlord did not want Stovall or people "of that kind" in his mobile home park. The landlord argued that Stovall had no standing to bring suit himself because he was not denied housing. This Court held that Stovall had standing as an individual who was "personally aggrieved" under the Civil Rights Law even though he was not denied housing. *Id.* at 636–37.

■ The Civil Rights Law is to be construed broadly to serve its purpose and explicitly provides for relief to anyone who is "personally aggrieved" by a discriminatory practice, whether or not that person is the direct object of the practice. Just as Stovall was aggrieved by the discriminatory practices in *Alder,* Belzer was "personally aggrieved" when his girlfriend and her child were denied housing based on their familial status. Although Belzer is not a "subject" of familial discrimination as defined by the Indiana Code, he has standing as an aggrieved person under the Indiana Civil Rights Law.

## II. Statute of Limitations

INI also contends that the Commission's complaint was barred by Indiana Code § 22–9.5–6–13. After a complaint is filed with the Commission, it must determine whether there is reasonable cause to support the charge of discrimination. *See* IND.

CODE § 22–9.5–6–8 (1998). If the Commission makes that finding, any complainant, respondent or aggrieved party may elect to have the claim determined in a civil action pursuant to Indiana Code § 22–9.5–6–12 by filing an election within twenty days of receipt of service of the finding on the electing person. If the election is made, Indiana Code § 22–9.5–6–13 states "the commission shall, not later than thirty (30) days after the election is made, file a civil action on behalf of the aggrieved person seeking relief under this section in a circuit or superior court...."

### A. Thirty Day Time Limitation

■ It is undisputed that the Commission filed the complaint on June 28, 1996, seventy days after Baker made the election to resolve the claim in a civil action. The Court of Appeals determined that the thirty day language was directory, not mandatory, and allowed the complaint to stand because it did not prejudice any substantial rights of the parties. *See Indianapolis Newspapers, Inc.,* 702 N.E.2d at 378–79. We conclude that this result is inconsistent with the language and purpose of the Civil Rights Law and that the thirty day requirement is mandatory.

■■ "The first and often the only step in resolving an issue of statutory interpretation is the language of the statute." *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 972 (Ind.1998). " '[N]othing may be read into a statute which is not within the manifest intention of the legislature' as ascertained from 'the plain and obvious meaning' of the words of the statute." *Indiana Bell Tel. Co. v. Indiana Util. Regulatory Comm'n,* 715 N.E.2d 351, 354 (Ind.1999) (quoting *Indiana Dep't of State Revenue v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994)). Indiana Code § 22–9.5–6–13 states "the commission *shall,* not later than thirty (30) days after the election is made, file a civil action." (emphasis added). This language certainly suggests that the thirty day requirement is mandatory, not directory.

"Shall" is defined as "will have to ... used in laws, regulations, or directives to express what is mandatory." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1075–76 (10th ed.1993); *see also* BLACK'S LAW DICTIONARY 1375 (6th ed. 1990) ("As used in statutes, contracts, or the like, this word is generally imperative or mandatory.").

■ The construction of the time limit as mandatory is also supported by Indiana case law that presumptively treats "shall" as mandatory. "When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.,* 549 N.E.2d 1019, 1022 (Ind.1990); *see also Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind. Ct.App.1995); *Sherrard v. Board of Comm'rs of County of Fulton,* 151 Ind. App. 127, 130, 278 N.E.2d 307, 309 (1972). Finally, this interpretation is further supported by *United Rural Electric,* 549 N.E.2d at 1022, which found statutory time deadlines presumptively mandatory.

The Court of Appeals held that the time limitation was directory using the factors identified in *May v. Department of Natural Resources,* 565 N.E.2d 367, 371 (Ind. Ct.App.1991), i.e., the statute failed to specify adverse consequences for noncompliance, the time limit provision did not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose of the statute. *May* dealt with a statutory provision that each state agency employing registered engineers "shall" adopt regulations authorized by another section of the statute. *Id.* That section in turn provided that each of these agencies was authorized to adopt "such rules ... as it may deem proper" to deal with engineer employment issues. *Id. May* held that a demoted engineer's challenge to his demotion on the ground that the Department of Natural Resources failed to have any such regula-

tion "rests on quicksand." *Id.* So it did, given that the range of regulation was clearly left to the agency's discretion by the "as it may deem proper" language. But INI's claim here rests on firmer ground.

The structure of the Civil Rights Law fortifies the conclusion that "shall" means what it says. Statutes of limitations and their value are widely understood. If this language does not require the Commission to file within thirty days or forever hold its peace, it has no function whatsoever. Equally important, there is no other provision creating a final time for bringing an action. If the thirty day provision is not mandatory, all parties would be left dangling in the uncertainty of laches, waiver, tolling, and related doctrines. This does not further the enforcement purposes of the Civil Rights Law. To the contrary, the enforcement goal is furthered by giving the affected private parties a bright line date by which they must take up the cudgel if the Commission fails to act. Moreover if thirty days is merely directory, an aggrieved party may assume, as did Belzer here, that the Commission is protecting the party's interests, fail to file an individual action, and run afoul of the one year statute of limitations. *See* IND.CODE § 22–9.5–7–1 (1998). Finally, this requirement obviously reflects a legislative policy to move these matters along. An open-ended time frame for filing by the Commission would frustrate that goal.

B. *Equitable Defenses to the Time Limitation*

■ The Commission argues that even if the thirty day time limit is mandatory the requirement of prompt filing is subject to equitable doctrines, including waiver, estoppel, and equitable tolling. Specifically, the Commission claims that the period for filing did not expire because it was subject to equitable tolling until May 22, 1996, when conciliation conferences were scheduled to be conducted. When statutes of limitations are running, a party may

**948**

either file its claim or obtain a waiver of the limitation period to keep negotiations going. Doing nothing does not do the job. We are directed to no facts supporting fraudulent concealment or other traditional means of tolling the statute. In the absence of any such showing, filing within the thirty day period is required.

### Conclusion

Because the Commission failed to file its complaint within the thirty day time limit imposed by Indiana Code § 22–9.5–6–13, the dismissal by the trial court is affirmed. Due to the resolution of this issue, the other issues addressed by the Court of Appeals are now moot and not addressed in this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.