STATE OF NEBRASKA, NEBRASKA EQUAL OPPORTUNITY
COMMISSION, ON BEHALF OF COMPLAINANTS
DEBORAH MINTER ET AL., APPELLANT,
V. DONNA JENSEN, APPELLEE.

609 N.W. 2d 362

Filed April 21, 2000.   No. S-98-1161.

Don Stenberg, Attorney General, and Suzanna G. Glover-Ettrich for appellant.

Betty L. Egan and Michael W. Pirtle, of Walentine, O'Toole, McQuillan & Gordon, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

The Nebraska Fair Housing Act, Neb. Rev. Stat. § 20-301 et seq. (Reissue 1997 & Cum. Supp. 1998), provides aggrieved

persons with the right to have their claims heard before the Nebraska Equal Opportunity Commission (NEOC) or, alternatively, to have those claims decided in a civil action in the district court. See §§ 20-335 and 20-340. When a charge of discrimination is issued by the NEOC, a complainant, respondent, or aggrieved person may elect to have that claim decided in a civil action. See § 20-335.

Section 20-340(1) provides, in relevant part, that if a party elects to have his or her claims determined in a civil action, "the commission shall authorize, and not later than thirty days after the election is made the Attorney General shall commence and maintain, a civil action on behalf of the aggrieved person in the appropriate district court seeking relief under this section." The sole question presented in this appeal is whether the 30-day period specified in § 20-340(1) is mandatory, such that an action filed after that 30-day period is time barred.

## FACTUAL AND PROCEDURAL BACKGROUND

The complainants, Deborah Minter, Michael J. Minter, and Michael J. Minter II, allege that they were injured when Donna Jensen, the owner of rental property located in Fremont, Nebraska, unlawfully refused to rent to the Minters after discovering that Deborah Minter is blind and uses a guide dog.

The Minters allegedly made arrangements to view the rental property on September 26, 1997, and were met by Jensen at 5:30 p.m. When Jensen saw that Deborah Minter was accompanied by a guide dog, Jensen allegedly informed the Minters that pets were prohibited at the rental property. The Minters allege that they informed Jensen that the dog was not a pet, but, rather, a service animal. Jensen then allegedly told the Minters that Jensen's husband had already rented the property that morning. The Minters allege that the property was not rented until 5:45 p.m. on September 26, after the Minters had been turned away from the property.

The petition states that the NEOC found, on January 16, 1998, reasonable cause to believe that Jensen engaged in discriminatory housing practices by refusing to rent to the Minters and refusing to accommodate Deborah Minter's disability. The NEOC therefore issued a charge of discrimination on behalf of

the Minters. Service was effected on January 29, and on February 11, Jensen elected to have the claim tried in a civil action. A petition was filed in the district court by the Attorney General on behalf of the Minters on August 13.

On September 1, 1998, Jensen entered a special appearance, objecting to the jurisdiction of the district court on the ground that the petition had not been filed within 30 days of Jensen's election to proceed in a civil action. On October 19, after a hearing on the matter, the district court sustained the special appearance and dismissed the case. A written order dismissing the case without prejudice was filed on October 26. The Attorney General timely appeals.

## ASSIGNMENTS OF ERROR

The Attorney General assigns that the district court erred in finding that the 30-day filing language of § 20-340 is mandatory and jurisdictional and in dismissing the action.

## STANDARD OF REVIEW

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Phelps Cty. Bd. of Equal. v. Graf*, 258 Neb. 810, 606 N.W.2d 736 (2000); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

## ANALYSIS

■ The central question presented is whether the 30-day filing period specified in § 20-340 is mandatory or merely directory. It is well established that there is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

■ As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998); *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). However, while the word "shall" may render a particular statutory provision mandatory in

character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *Id.*

We have stated:

> " 'If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure [sic] order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.' "

*State v. $1,947*, 255 Neb. at 297, 583 N.W.2d at 616-17, quoting *Matter of Sopoci*, 467 N.W.2d 799 (Iowa 1991).

The Nebraska Fair Housing Act was modeled closely after the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. (1994 & Supp. III 1997). See Judiciary Committee Hearing, L.B. 825, 92d Leg., 1st Sess. (Feb. 13, 1991). Section 20-340 is effectively identical to its federal counterpart, § 3612(o)(1).

Both parties cite in their briefs to *U.S. v. Tierra Apartments Ltd. Partnership*, 865 F. Supp. 624 (D. Neb. 1994). However, that case was based on a rule of law in the federal courts dependent upon the doctrine of " 'discretionary benevolence,' " which is not found in our jurisprudence. *Id.* at 628.

Other state jurisdictions have also based their corresponding state statutes upon the federal Fair Housing Act, thus incorporating language in their state statutes nearly identical to that found in § 20-340. The Indiana Supreme Court recently determined that the 30-day filing period was mandatory in *State, Indiana Civil Rights Com'n v. INI*, 716 N.E.2d 943 (Ind. 1999). In that case, the state failed to file an action under the Indiana Civil Rights Law within the 30-day filing period specified in Ind. Code Ann. § 22-9.5-6-13 (Michie 1997). The trial court dismissed the action, but the dismissal was reversed by the Indiana Court of Appeals. The Indiana Supreme Court reversed the decision of the Court of Appeals and affirmed the dismissal, determining that the 30-day filing period was a statute of limitations. The court stated:

Statutes of limitations and their value are widely under-stood. If this language does not require the Commission to file within thirty days or forever hold its peace, it has no function whatsoever. Equally important, there is no other provision creating a final time for bringing an action. If the thirty day provision is not mandatory, all parties would be left dangling in the uncertainty of laches, waiver, tolling, and related doctrines. This does not further the enforce-ment purposes of the Civil Rights Law. To the contrary, the enforcement goal is furthered by giving the affected pri-vate parties a bright line date by which they must take up the cudgel if the Commission fails to act. Moreover if thirty days is merely directory, an aggrieved party may assume, as did [the complainant] here, that the Commission is protecting the party's interests, fail to file an individual action, and run afoul of the one year statute of limitations. *See* IND.CODE § 22-9.5-7-1 (1998). Finally, this requirement obviously reflects a legislative policy to move these matters along. An open-ended time frame for filing by the Commission would frustrate that goal.

*State, Indiana Civil Rights Com'n v. INI*, 716 N.E.2d at 947.

Based upon our own reading of § 20-340, in the context of the entire Nebraska Fair Housing Act, we are persuaded by the rea-soning of the Indiana Supreme Court, and likewise conclude that the 30-day limitation of § 20-340 is mandatory and not directory. One of the overall purposes of the Nebraska Fair Housing Act is reflected by the act's establishment of deadlines for action at each step of the process for resolving contested claims of discrimination.

For instance, § 20-333(1)(a) provides that the NEOC, within 100 days after the filing of the complaint or removal of the com-plaint from a local agency, must either determine whether to issue a charge on behalf of the aggrieved person, or notify the complainant and respondent in writing of its reasons for failure to act within 100 days. It is not without significance that unlike § 20-340, § 20-333 allows the NEOC, given good cause, to act beyond the statutorily established time period. The Attorney General is provided with no such privilege by § 20-340, and we must assume that this legislative omission was intentional.

After service of a charge from the NEOC, a complainant, respondent, or aggrieved person has 20 days to elect to have the claim decided in a civil action. § 20-335. Thereafter, § 20-340(1) directs the Attorney General to file an action within 30 days. Regardless of the Attorney General's filing, the aggrieved party is permitted to file a civil action individually at any time within 2 years after the occurrence forming the basis of the complaint, and the Attorney General has the discretion to intervene in such an action. § 20-342(1)(a)(i) and (5).

In summary, the act provides a clear set of steps necessary for the determination of a claim in a civil action, and establishes a clear set of deadlines for taking those steps. Where such deadlines are intended to be directory, rather than mandatory, the act states such deadline in unambiguous language and sets forth procedures that must be followed if the established deadline will not be met.

The clear intent of this statutory scheme is to provide that at each step in the determination of a claim, the interested parties are aware of the procedural posture and direction of the case, and are thus able to take the appropriate steps necessary to secure their rights and protect their interests. The establishment of deadlines and the requirement that the parties be notified in writing if a directory deadline is not met ensure that all interested parties are kept apprised of the progress of the case and the decisions made by all the parties thereto.

As was noted by the Indiana Supreme Court in *State, Indiana Civil Rights Com'n v. INI*, 716 N.E.2d 943 (Ind. 1999), the 30-day limitation of its counterpart to § 20-340 protects aggrieved parties as well as complainants by notifying aggrieved parties that the Attorney General is not diligently prosecuting a claim, and doing so at a point at which the aggrieved party may still act to secure his or her own rights. Similarly, the entire process established by the act serves to protect aggrieved parties, complainants, and respondents by compelling a clear and expeditious timetable for the resolution of claims and mandating that all interested parties are aware, at each point, of the posture of the case.

In short, we conclude that the 30-day time limit set forth in § 20-340 is essential to accomplishing one of the principal pur-

poses of the Nebraska Fair Housing Act, which is to promptly advance the determination of claims, and ensure that all parties are advised of the posture of the case and the steps necessary for them to protect their own interests. Because the 30-day limitation is essential to the purpose of the statute, it does not fall within the exception to the general rule that the word "shall" is considered mandatory and inconsistent with the idea of discretion. See *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998).

The Attorney General argues that if § 20-340 is interpreted as mandatory, it would be unconstitutional. The Attorney General relies upon cases that have interpreted "shall" as "may" under circumstances where statutes purported to direct the judicial branch in how to direct judicial business. See, e.g., *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996), and cases cited therein. The Attorney General essentially argues that if the Legislature attempts to direct that the Attorney General "shall" file an action within 30 days, the Legislature would be violating the separation of powers.

If this argument was accepted, then it would seem that the State would no longer be bound by statutes of limitations. Clearly, this result would be absurd. In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998); *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998), *cert. denied* 525 U.S. 931, 119 S. Ct. 339, 142 L. Ed. 2d 280.

The Attorney General also argues that this interpretation would compel the Attorney General to prosecute actions, even if he or she felt them to be meritless. However, § 20-340 is implicated only *after* the NEOC issues a charge against the defendant. See § 20-333(2). Consequently, § 20-340 simply directs the executive branch to pursue an action after an agency of that branch determines that a charge should be issued in the case, and executive discretion has thus been preserved. This is evidenced by the fact that although the Attorney General's office is responsible for litigating the claim, the action is brought in the name of the NEOC—the very agency responsible for determining whether the initial complaint has merit and should be pros-

ecuted. Consequently, it is evident that no violation of separation of powers occurs, as the executive branch, through the NEOC and the Attorney General, determines if the charge is to be issued and is responsible for the prosecution of the claim.

Moreover, this court has previously rejected a claim similar to that advanced in this case by the Attorney General. In *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997), the State argued that the State Government Effectiveness Act, known as the Whistleblower Act, was unconstitutional in providing that state personnel employment termination actions "shall" be stayed or reversed if the Ombudsman determines that the firing occurred because the state employee cooperated with an investigation of wrongdoing. The State thus argued that "shall" should be construed as permissive in order to preserve executive discretion in the hiring and firing of executive branch employees. *Id.* This court rejected the State's argument. We referred to authority in which encroachments on the judicial function were held to be directory, but found such authority to be distinguishable

> in that in the instant case the Legislature's encroachment is upon the executive branch, not the judiciary. The judiciary, not the executive branch, serves as a check upon the constitutionality of legislative enactments. As such, the judiciary is permitted to construe legislative enactments in a manner that eliminates legislative attempts to usurp judicial power.

*State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. at 531, 557 N.W.2d at 694.

In *State ex rel. Shepherd v. Neb. Equal Opp. Comm., supra,* this court refused to extend to the executive branch the line of authority cited by the Attorney General in the instant case. We similarly decline to do so here.

## CONCLUSION

We determine that the word "shall" as used in § 20-340 is mandatory, that there is no merit to the Attorney General's separation of powers argument, and that the decision of the trial court should be affirmed.

AFFIRMED.