IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ANDREW V. VILLAGE OF NEMAHA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


RICHARD ANDREW ET AL., APPELLANTS,

V.

THE VILLAGE OF NEMAHA, NEBRASKA, APPELLEE.


Filed June 27, 2017.    No. A-16-208.


Appeal from the District Court for Nemaha County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Damien J. Wright, of Welch Law Firm, P.C., and John W. Voelker, of Voelker Law Office, for appellants.

Angelo M. Ligouri, of Ligouri Law Office, for appellee.


MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Richard Andrew, Jane Andrew, and Luke Andrew appeal from an order of the district court for Nemaha County denying the Andrews' petition in error. On appeal, the Andrews challenge the court's affirmance of the decision by the Village of Nemaha that their anhydrous ammonia storage tanks were a nuisance and in denying a building permit for the tanks. Because we find no error, we affirm.

- 1 -

## II. BACKGROUND

### 1. INSTALLATION OF ANHYDROUS AMMONIA STORAGE TANKS AND APPLICATION FOR BUILDING PERMIT

The present appeal arose from the installation of two 12,000-gallon anhydrous ammonia storage tanks upon real property belonging to the Andrews and their subsequent application for a corresponding building permit.

On July 15, 2014, the Andrews began to install the storage tanks. A concrete pad for the storage tanks was installed prior to this date. The installation was done without first notifying the Village of Nemaha and requesting a building permit. The storage tanks are located approximately .5 miles north of the Village corporate limits. On the same day, the Village sent a letter to Richard and Jane Andrews, notifying them that they were in violation of Village Code § 150.01 which requires landowners to file a building permit application. The Village advised the Andrews to cease all further building activities until they came into compliance with the Village Code.

Also on July 15, 2014, the Village Board of Trustees passed Ordinance No. 2014-1, banning the large scale production or storage of anhydrous ammonia within the jurisdiction of the Village unless approved by the Board of Trustees. This ordinance specifically establishes the following:

> [N]o anhydrous ammonia production or storage of 2,500 gallons or more, in liquid or gas form, shall be permitted within the jurisdiction of the Village of Nemaha, Nebraska as identified in Village Code 151.02 "Zoning Ordinance Adopted", including the Village's one mile extraterritorial jurisdiction pursuant to Neb. Rev. Stat. 17-1001; unless otherwise approved by the Village Board of Trustees, after public hearing, with health and public safety restrictions.

In September 2014, an application for a building permit was submitted by the Andrews. The application consisted of a one-page, hand-drawn site description of the proposed anhydrous ammonia storage tanks. Following receipt of the application, the Village Board sought additional information from the Andrews, including a risk management plan and liability insurance coverage. The Village expressed concern to the Andrews regarding the "potential health and property damage that can result from an anhydrous ammonia mishap with storage of this hazardous substance," and noted that "the rural fire department is ill equipped to even try to handle an accidental release or possible explosion." The Village expressed concern that there was no means for a community of its size and limited resources to properly protect its residents from such an accident. The Village decided to take no further action regarding the proposed permit until receipt of a safety/risk management plan.

In October 2014, the Andrews submitted a Certificate of Liability Insurance on the real estate, showing a general liability policy of $1 million under a general farm/ranch policy. The Andrews also submitted a Safety Review report, dated October 1, 2014, authored by Joey Barnes, a mechanical engineer.

After reviewing these documents, the Village notified the Andrews by letter that it still had a number of concerns about the proposal to install the tanks. The Village was concerned by the tanks being close to a residential area, which could lead to a "large scale disaster" if a recognizable release occurred. The Village was also concerned that the Safety Review did not include sufficient risk management planning, lacked an emergency response plan, and contained an incomplete hazard review checklist. The Village advised that it was unrealistic to believe that the volunteer rural fire protection district or the sheriff's office would be able to properly respond in the time frame necessary to prevent a disaster. Concern was also expressed regarding the lack of evidence of emergency training by the Andrews, who were the only parties listed as emergency contacts within the Safety Review. The Village also felt the facility was severely underinsured, placing the risk and expense on the community. The Village concluded its comments by expressing a desire to collaborate with the Andrews regarding the possibility of moving the storage tanks to a safer location.

## 2. VILLAGE BOARD OF TRUSTEES HEARING AND DECISION

On January 12, 2015, the Village Planning Commission received the Andrews' building permit application. The commission voted unanimously to send the application to the Village Board of Trustees for consideration. The commission made no decision regarding the permit's merit.

On February 10, 2015, a special public hearing was held before the Village Board of Trustees to consider the Andrews' building permit application. Following public comments, received over a period of 30 minutes, the Board voted to deny the building permit and directed the Village attorney to proceed with nuisance abatement or other legal remedy to remove the anhydrous storage tanks.

On March 4, 2015, the Village notified the Andrews of the Board's denial of the building permit request, and its determination that the storage facility was an unsafe building and "a nuisance against the public health and welfare of the community." The letter advised that this decision was based upon the

> close location of a proposed large scale storage facility of ammonia anhydrous, a hazardous substance, and the proximity to the (Village), with no known safeguards and an imminent threat of sever (sic) health consequences should a leak or exposure occur within the proposed location, thus leaving the residents of the (Village) subject to an unnecessary risk of harm on health and human life without any adequate remedy.

The Board directed the Andrews to take immediate action to remove the storage tanks within 60 days. The letter advised that the Andrews could appeal this determination to the Board of Trustees, acting as the Board of Appeals, within 10 days.

## 3. APPEAL TO BOARD OF TRUSTEES ACTING AS BOARD OF APPEALS

On March 9, 2015, the Andrews filed two separate notices of appeal, one involving the Village Board's denial of the building permit request and the other involving the nuisance

finding and determination that a dangerous building/condition exists. The Village set the hearing before the Board of Trustees sitting as the Board of Appeals.

## 4. BOARD OF TRUSTEES APPEAL HEARING

On April 2, 2015, a public hearing was held before the Board of Trustees acting as the Board of Appeals. The Andrews' attorney briefly questioned the Board about their status as a Board of Appeals, but after hearing how the appeal was being heard, did not object to the appeal process. Instead, the Andrews proceeded to present evidence to show why the facility should not be determined to be unsafe or a nuisance. Exhibits submitted by the Andrews included Village Ordinance 2014-1; Village of Nemaha Zoning Regulations; minutes from the February 10, 2015 hearing; correspondence between the Andrews and the Village; affidavit of Luke Andrew, with Joey Barnes' Safety Review report attached; affidavit of Regina Shields, with the Fire Marshall facility code review and inspection order and the American National Standard Institute's "Safety Requirements for the Storage and Handling of Anhydrous Ammonia" (ANSI SK61.1-1999), attached; and the affidavit of J.R. Isch.

### (a) Affidavit of Luke Andrew

Luke is the son of Richard and Jane Andrew, the owners of the subject property. He engages in farming as a joint venture with his parents. Luke discussed their desire to install two anhydrous ammonia storage tanks, each with a capacity of 12,000 gallons, to store fertilizer for their farming operations. Luke stated that they submitted plans to the Nebraska Fire Marshall for review and that an inspector of the agency gave preliminary approval to proceed with the plans. Prior to July 15, 2014, the Andrews began installing a concrete pad in preparation for the storage tanks. On July 15, the Andrews began installing the tanks. On the same date, the Village passed Ordinance No. 2014-1, banning the storage or producing of anhydrous ammonia in excess of 2,500 gallons within the jurisdiction without approval. Luke claims that the Andrews learned of this ordinance subsequent to starting installation of the tanks, without any prior notice that the Board was considering enacting such an ordinance. Luke stated that he was unable to locate any published notice of a public hearing held prior to enactment of this ordinance, and there did not appear to be any recommendation from the Village Planning Commission regarding the ordinance.

Luke further stated that after completing the installation but before utilizing the tanks, they hired Joey Barnes to perform a safety review of the storage tanks, the results of which are discussed below.

### (b) Safety Review by Joey Barnes

Barnes drafted a written report of his findings, completed on October 1, 2014, which is attached to Luke's affidavit. The report detailed Barnes' 30 years of experience working with anhydrous ammonia systems. Barnes has worked with fertilizer manufacturers and anhydrous ammonia dealers to implement Risk Management and Process Safety Management Programs as required by the Environmental Protection Agency (EPA) and Occupational Safety and Health Administration regulations (OSHA).

- 4 -

Barnes notes that anhydrous ammonia is classified by OSHA and the U.S. Department of Transportation (DOT) as a hazardous material, and by the EPA as an extremely hazardous substance. However, Barnes explains that "by using proper procedures and care inhandling (sic), the possibility of a hazardous situation occurring can be virtually eliminated."

On September 27, 2014, Barnes inspected the Andrews' storage tanks. Barnes utilized a Hazard Review Checklist based on the American National Standards Institute (ANSI) Standard for the Storage and Handling of Anhydrous Ammonia (K61.1, 1999 edition). The ANSI K61.1 has been adopted by OSHA, EPA, and the State of Nebraska. This inspection led to two minor recommendations; to install an emergency shutoff valve and display emergency contact information, which the Andrews implemented. Beyond these recommendations, Barnes concluded that the facility contains all the safeguards required by law and good engineering practices, and opined that the facility "is as good as any and better than most because it does have the latest, most up-to-date equipment available."

Barnes prepared an emergency response plan, which lists Luke as the first emergency contact, and the Nemaha Rural Fire Protection District and Nemaha County Sheriff are listed as designated first responders.

The Barnes report also set forth "worst case" and "alternative case" release scenarios, prepared using assumptions required if the tanks were subject to EPA regulations. The "worst case" scenario estimates that if 85% of a storage tank's capacity were released (i.e., the maximum releasable quantity) over a 10 minutes period, the gas would have a "toxic endpoint" of 2.8 miles, encompassing the Village. The "alternative case" scenario estimates that a break in a 1¼-inch transfer hose, resulting in release of gas for two minutes until stopped by an automatic excess flow valve or manual remote emergency shutoff valve, would lead to a "toxic endpoint" of .4 miles, reaching the edge of the Village.

The Barnes report set forth the various effects on the human body caused by exposure to anhydrous ammonia, depending on the concentration and whether it is in liquid or vapor form. These effects range from a detectable odor with nose irritation to death by suffocation.

(c) Affidavit of Regina Shields

Affidavit testimony by Regina Shields, general counsel for the Nebraska State Fire Marshall, was also submitted by the Andrews. Shields, after reviewing agency records, stated that an inspection deputy conducted an onsite, physical inspection of the storage tanks to determine compliance with ANSI K61.1, the standards adopted by the fire marshall for the storage and handling of anhydrous ammonia. This initial inspection led to the discovery of certain deficiencies, including the lack of required safety valves, missing display of emergency contact information, and the absence of certain safety equipment. Upon a second inspection, the deputy found the issues to have been corrected. The deputy issued a revised inspection order, finding the storage tanks to be in compliance with applicable fire marshall regulations and approved for use. The Fire Marshall has no permitting process for anhydrous ammonia facilities, and only issues orders regarding compliance with Fire Marshall Code requirements.

### (d) Affidavit of J.R. Isch

Isch has worked with anhydrous ammonia in a professional capacity for over three decades, receiving extensive training on proper storage of this substance. Isch has designed and supervised construction of anhydrous ammonia plants. Isch understands the codes, regulations, and industry standards for anhydrous ammonia storage.

Isch conducted a review of the Andrews' anhydrous ammonia storage tanks. He found the facility to be "properly constructed according to industry standards and is a state of the art facility that incorporates all the latest safety equipment and protective safeguards." Isch formed the professional opinion that the facility "poses no risk of harm to the general public."

Isch was present at the April 2, 2015 appeals hearing before the Village Board of Trustees, and the Board, along with the public, were invited to question him regarding the Andrews' facility. However, no questions were asked and no concerns were brought to his attention during the hearing.

### (e). ANSI SK61.1-1999 (Safety Requirements for Storage and Handling of Anhydrous Ammonia)

The ANSI K61.1, as the definitive standard regarding safe storage and handling of anhydrous ammonia, was presented to the Board for consideration. ANSI K61.1 describes the properties of anhydrous ammonia (including exposure risks), specifies proper storage equipment, and contains the standard safety requirements for the storage and handling of anhydrous ammonia. These requirements include having trained personnel and specific equipment for protection from ammonia leaks.

### 5. BOARD OF TRUSTEES DECISION

On May 13, 2015, the Board of Trustees, sitting as the Board of Appeals, entered a written decision denying the Andrews' appeal, allowing the building permit denial and pursuit of a nuisance abatement to stand.

The Board found no explanation for installing a "large scale hazardous storage facility" right outside of the community, rather than beyond the 1-mile extraterritorial jurisdiction, subjecting the residences "to the constant reality that one mishap or malfunction could likely potentially wipe out an entire community." It was noted that the storage tanks are within .5 miles of residential property and .8 miles from the Village center. Further, the Board found the Village did not have "adequate protection, facilities, manpower or resources" to protect against a large leak. Due to the "permanent and potentially deadly impact" of anhydrous ammonia upon the human the body, and the "severely inadequate safe guards and lack of resources to protect the community from harm" in the event of a leak, the Board felt required to deny the appeal and demand removal of the storage tanks. The Andrews were given 60 days to remove the storage tanks, unless an appeal was made staying the decision.

### 6. ANDREWS' PETITION IN ERROR

On May 28, 2015, the Andrews filed a petition in error with the district court. The Andrews sought reversal of the decision that the storage tanks constitute a nuisance, reversal of

the building permit application denial, and an order directing the Village to issue a building permit.

The Village filed an answer and counterclaim. The Andrews filed a motion to strike the Village's counterclaim, which was later granted.

On December 3, a temporary injunction was entered preventing the Andrews from storing anhydrous ammonia pending the final hearing on the petition in error.

### 7. DISTRICT COURT HEARING AND ORDER

On January 20, 2016, a hearing on the petition in error was held. The record of prior proceedings was presented and received into evidence.

On January 27, 2016, the district court entered an order denying the Andrews' petition in error. The court determined that the building permit denial was based entirely upon the storage tanks being a nuisance. The court found the provisions of Village Code Chapter 91.16 (Abatement Procedure) to be triggered, which places the burden upon the property owner to show cause why the condition should not be found to be a public nuisance and remedied. The court also noted that pursuant to Chapter 91.16, the Board of Trustees "shall" hear evidence submitted by the Board of Health in making a nuisance determination. The court found this was not done in the present case. However, the court held the word "shall" as used in this ordinance to be directory and not mandatory. Therefore, the court found it unnecessary for the Village to produce evidence from its Board of Health to establish the existence of a nuisance.

The court went on to address the Andrews' argument that the Village needed to support its findings with its own evidence. The court held that the Board "can consider all evidence submitted at the hearing no matter what source, as long as its decision rendered is supported by sufficient relevant evidence and is restricted to the record at its hearing." The court acknowledged the record shows the storage tanks comply with all applicable industry standards, and are state of the art. However, this was one of many factors necessary for the Village's consideration.

Reviewing the evidence contained in the record, the court found sufficient relevant evidence to support the Board's decision to deny the Andrew's building permit application based upon nuisance. The court found sufficient evidence to support the Village's concerns that anhydrous ammonia is an extremely hazardous substance with devastating effects on humans; the Andrews' safety plan rests entirely on Village resources; and the Village lacks adequate protection, facilities, manpower, or resources to protect against a leak.

On February 3, 2016, the Andrews filed a motion to reconsider with the district court. On February 24 the motion was denied.

The Andrews subsequently perfected this appeal.

### III. ASSIGNMENTS OF ERROR

The Andrews assign, restated, that the district court erred in (1) placing the burden of proof upon the Andrews to "show cause" that their anhydrous ammonia storage tanks did not constitute a nuisance; (2) holding the Village was not required to adduce evidence that the tanks constituted a nuisance in fact; (3) concluding there was sufficient evidence to support the

Village's decision that the tanks constituted a nuisance in fact; (4) concluding there was sufficient evidence to support the Village's finding that it lacked adequate protection, facilities, manpower, or resources to protect the Village from an anhydrous ammonia leak; (5) relying on the invalidly enacted Ordinance 2014-1; and (6) failing to direct the Village to issue a building permit due to the tanks not constituting a nuisance.

## IV. STANDARD OF REVIEW

In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. *Kaapa Ethanol v. Board of Supervisors*, 285 Neb. 112, 825 N.W.2d 761 (2013); *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012); *Scott v. County of Richardson*, 280 Neb. 694, 789 N.W.2d 44 (2010).

The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did from the testimony and exhibits contained in the record before it. *Blakely, supra*. See, also, *Marion's v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 982, 858 N.W.2d 178 (2015).

An administrative agency decision must not be arbitrary or capricious. *Blakely, supra*. Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis that would lead a reasonable and honest person to the same conclusion. *Id.*

Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts, and as it believes for the best interests of its municipality, and where there is no showing that the body acts arbitrarily, or from favoritism, ill will, fraud, collusion, or other such motives, it is not the province of a court to interfere and substitute its judgment for that of the administrative body. *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004).

## V. ANALYSIS

### 1. SCOPE OF ISSUES ON APPEAL

On appeal, the Village maintains that the storage tanks are not merely a nuisance, but that placement of these tanks was also in violation of zoning regulations, the Village Comprehensive Plan, Ordinance 2014-1, and the Village Code. The Andrews in turn assert that the issue on appeal is limited to the issue framed by the Village as the basis for denying the Andrews' permit application, to-wit: whether the storage tanks constitute a nuisance based on their proximity and perceived threat of harm to Village residents.

The district court determined that the Village based its denial of the building permit on the basis that the anhydrous ammonia tanks constituted a nuisance; not that they were in violation of zoning ordinances, regulations, or code provisions, with the exception of those pertaining to building permits and nuisance. We agree. A review of the original decision entered

by the Village Board of Trustees reflects "nuisance against the public health and welfare" as the stated reason for denying the permit. The Board determined the storage tanks to be an "unsafe building" within the extraterritorial jurisdiction of the Village. The Board did not expressly cite to any zoning regulations or ordinances in support of this decision. The Board of Trustees sitting as the Board of Appeals similarly focused its order upon health and safety concerns created by anhydrous ammonia storage. The Board of Appeals also did not expressly cite to any zoning regulations or ordinances in denying the appeal.

We will therefore focus on the issue of whether there was sufficient, relevant evidence to support the decision to deny the building application on the basis that the tanks constituted a nuisance. Certain Village ordinances are, however, relevant to the nuisance and building permit determinations and we discuss those now.

Chapter 150 of the Code establishes building regulations. Section 150.01 requires that any person desiring to construct any building within the Village's jurisdiction shall file a building permit application. The application is to be checked and examined by the Board of Trustees, and if it is in conformity with application requirements and all other applicable ordinances, the Board shall authorize the municipal clerk to issue the permit.

Section 150.30 defines an "unsafe building" to include any building or human-made structure "[w]hich is dangerous to the public health because of its condition and which may cause or aid in the spread of disease or injury to the health of the occupants of it or neighboring structures." This section establishes that any such unsafe building is declared to be a nuisance.

Section 150.33 provides that upon notice requesting demolition of a building, the owner may request an appeal hearing before the Board of Trustees sitting as the Board of Appeals to present reasons against demolition.

Chapter 91 of the Code establishes health and safety regulations. Section 91.15(A) provides a general definition of "nuisance" as follows:

> A NUISANCE consists in doing any unlawful act, or omitting to perform a duty, or suffering or permitting any condition or thing to be or exist, which act, omission, condition, or thing either: (1) Injures or endangers the comfort, repose, health, or safety of others; (2) Offends decency; (3) Is offensive to the senses; (4) Unlawfully interferes with, obstructs, tends to obstruct, or renders dangerous for passage any stream, public park, parkway, square, street, or highway in the municipality; (5) In any way renders other persons insecure in life or the use of property; or (6) Essentially interferes with the comfortable enjoyment of life and property, or tends to depreciate the value of the property of others.

Section 91.15(B) provides a specific definition of "nuisance," stating that "[t]he maintaining, using, placing, depositing, leaving, or permitting of any of the following specific acts, omissions, places, conditions, and things are hereby declared to be nuisances." This definition does not expressly list placement and maintenance of anhydrous ammonia storage tanks as a nuisance. However, this section includes a catch all provision, establishing that "[a]ll other things specifically designated as nuisances elsewhere in this code" are nuisances under this definition. This would include "unsafe buildings," which are designated a nuisance under Section 150.30.

Section 91.16 establishes the procedure to challenge a nuisance determination. This provision establishes that "[u]pon determination by the Board of Trustees that the owner or occupant has failed to keep that real estate free of public nuisances, notice to abate and remove the nuisance and notice of the right to a hearing before the Board of Trustees and the manner in which it may be requested shall be given to the owner or occupant . . ." During such a hearing, the owner carries the burden to appear before the Board to show cause why the condition should not be found to be a public nuisance and remedied. This section provides that the Board shall hear all objections by the owner and evidence submitted by the Board of Health. If, after consideration of the evidence, the Board finds the condition to be a nuisance, it is to order the owner to remedy the nuisance.

The Village of Nemaha zoning regulations include coverage of the 1-mile extraterritorial zoning jurisdiction around the Village corporate limits pursuant to Neb. Rev. Stat. § 17-1001, which allows a village to "apply by ordinance any existing or future zoning ordinances, property use regulation ordinances, building ordinances . . . to an area within one mile of the corporate limits of such municipalities, with the same force and effect as if such area were within their corporate limits."

## 2. BURDEN OF PROOF FOR NUISANCE

The Andrews argue that the district court erred in placing upon them the burden of proof to establish their storage tanks were not a nuisance. The Andrews assert that due process requires that before an owner is deprived of property pursuant to nuisance abatement, the government has the burden to establish that a particular thing is a nuisance. We disagree with the Andrews' characterization of the district court's decision.

As noted by the district court, the Village Board denied the Andrews' request for a building permit based upon its finding that the facility was a nuisance. The district court further noted that the premise of Andrews' argument in its petition in error is that the Village did not present evidence at the hearing to contradict Andrews' evidence that the storage of anhydrous ammonia was not a nuisance. The court agreed that the only evidence presented at the hearing was that submitted by Andrews, but it determined that the Board could consider all evidence submitted at the hearing as well as all Village ordinances in effect when making its decision on the Andrews' application for a building permit.

We find no error in the district court's determination that it was unnecessary for the Village to present its own evidence that the storage tanks constituted a nuisance. It was sufficient in this case for the Village to rely upon the evidence adduced by the Andrews as well as the Village's own ordinances. Procedural due process requires reasonable time and opportunity to present evidence concerning the nuisance accusation, and that the administrative agency's decision be supported by sufficient relevant evidence. See *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). Extensive evidence was presented by the Andrews, much of which was relevant to the Board's nuisance determination.

In denying the petition in error, the district court found that there was sufficient relevant evidence to support the Board's decision to deny the Andrews' application for a building permit for an anhydrous ammonia storage facility based upon health concerns to the general public and

deficiencies in the safety plan. The court concluded that while the safety report indicated that the equipment in question was safe based on industry standards, "it did not mean the Village had to accept it given its ordinances and the risks set out in the report and its own capabilities to protect its citizens."

We note that within its order, the district court referenced Andrews' request for a hearing under Section 150.33 of the Village Code, which the court indicated places on the applicant the burden to present reasons why the building should not be removed. Further, because the Village had determined that the denial of the permit was based upon the structure being a nuisance, the court noted that Section 91.16 was triggered, which ordinance the court noted placed the burden on the owners to show cause why the condition on the premises should not be found to be a public nuisance.

Although the district court cited the ordinances regarding Andrews' burden in their appeal of the denial of the building permit and nuisance determination, the district court did not base its decision to deny the petition in error on a finding that the Andrews failed to satisfy their burden of proving that the anhydrous ammonia tanks were not a nuisance. Rather, the district court found that the Village Board based its decision to deny the building permit and to order removal of the tanks on sufficient relevant evidence. The district court applied the correct standard of review.

The Andrews' first assignment of error is without merit.

### 3. NECESSITY OF EVIDENCE FROM BOARD OF HEALTH

The Andrews argue that the district court erred in holding the Village was not required to produce evidence from the Board of Health that the storage tanks constituted a nuisance.

Section 91.16(B) of the Village Code sets forth the role of the Board of Health in a nuisance determination. This section falls within the nuisance portion of the Village Code. It provides, in relevant part, the following:

> Upon the date fixed for the hearing and pursuant to the notice, the Board of Trustees shall hear all objections made by the owner or occupant and *shall* hear evidence submitted by the Board of Health. If, *after consideration of all the evidence*, the Board of Trustees finds that the condition is a public nuisance, it shall, by resolution, order and direct the owner or occupant to remedy the public nuisance at once.

(Emphasis supplied.)

Neb. Rev. Stat. § 17-208(3) (Reissue 2012) establishes that the Board of Health is to consist of three members: the chairperson of the Village Board to serve as chairperson; a physician or health care provider to serve as medical advisor, if one can be found who is willing to serve; and a marshal or chief of police if one has been appointed by the Village Board of Trustees, to serve as secretary and quarantine officer. The stated purpose of this board is to "safeguard the health of the people of such village and prevent nuisances and unsanitary conditions."

The district court held that the word "shall" as used in this ordinance is "directory and not mandatory." The court provided the following explanation:

While the absence of evidence from the Village's Board of Health may leave the Board without evidence to rest any finding of a nuisance, it seems entirely a case by case fact question. In some instances evidence from a Board of Health may very well not be needed. An example of this is where the facts or condition of the property fall within the specific definitions [of nuisance] set out in Chapter 91.15(B). Or, if the evidence submitted on its face shows the property meets the [general nuisance] definition of Chapter 91.15(A). Since the Board of Health as per Nebraska Statute recommends but does not require a medical expert to be a member of the Village Board of Health, it seems clear to this court that it was not the intent of the ordinance to mandate that evidence come to the Board of Trustees through the Board of Health before any findings could be made of a condition or property being a nuisance. Finally, as in our instant case, public health evidence of injury or disease may find its way into the evidence without coming in from the local Health Board.

There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. Ordinarily, such differences must be determined by the intent of the Legislature as gleaned from the whole statute. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005).

As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. Nonetheless, while the word "shall" may render a particular statutory provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *Forgey v. Nebraska. Dept. of Motor Vehicles*, 15 Neb. App. 191, 724 N.W.2d 828 (2006).

If the prescribed duty is essential to the main objective of a statute, the statute ordinarily is mandatory, and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to ensure order and promptness in the proceeding, the statute ordinarily is directory, and a violation will not invalidate subsequent proceedings unless prejudice is shown. *State on behalf of Minter v. Jensen*, 259 Neb. 275, 609 N.W.2d 362 (2000); *Forgey, supra*.

We agree with the district court that use of the term "shall" in Section 91.16 is directory, not mandatory. Section 91.16 specifically provides that "[i]f, after consideration of *all* the evidence," the Board of Trustees finds a nuisance to exist, it shall direct the owner to remedy the nuisance. Evidence submitted by the Board of Health is simply listed as one source of evidence available for the Board's consideration.

The "prescribed duty" of hearing evidence from the Board of Health does not appear essential to the main objective of the ordinance; rather, it merely provides a source of evidence that can be considered during the nuisance abatement proceedings. Evidence from the Board of Health was unnecessary in this case, as extensive evidence provided by the Andrews outlined the health concerns of the anhydrous ammonia tanks and established a sufficient basis by which the Board of Trustees could find a nuisance. Further, as noted by the district court, the directory

nature of this ordinance provision is also supported by Neb. Rev. Stat. § 17-208(3) recommending, but not requiring, a medical expert to sit on the Board of Health.

The Andrews' second assignment of error is without merit.

### 4. NUISANCE DETERMINATION

The Andrews argue that the district court erred in concluding there was sufficient evidence to support the Village's determination that their anhydrous ammonia tanks constituted a nuisance. The Andrews point to the evidence showing the tanks to be in compliance with applicable regulations and industry standards.

Upon our review, we conclude that the Village Board of Trustee's findings and decisions were supported by sufficient relevant evidence upon which the Board could reasonably conclude that the storage tanks amounted to a nuisance under the circumstances of this case.

Extensive evidence was received concerning the harm imposed by a potential anhydrous ammonia leak. Anhydrous ammonia is classified by OSHA and the DOT as a hazardous material, and by the EPA as an extremely hazardous substance. The ANSI K61.1 explains the exposure risk imposed by an anhydrous ammonia gas leak, ranging from eye, skin, nose, throat, and lung irritation, to serious lung damage, skin tissue corrosion, and death. Exposure for even a relatively short period of time can lead to serious health problems. The ANSI explains that treatment should be done promptly and specifies that in emergency conditions, only trained personnel wearing respiratory equipment should attempt to stop a leak. Equipment required to safely contain an anhydrous ammonia gas leak include gas masks, goggles, and protective clothing.

The location of the storage tanks, being only .5 miles from residential property and .8 miles from the Village center, also supports the Board's decision. The Board, in its discretion, found the proximity of the tanks, combined with the dangerous nature of anhydrous ammonia gas, to be of great concern. Evidence was also presented regarding the inability of the Andrews or the Village to protect against the potential harm of exposure. This collective evidence supported a determination that the facility presented a health and safety concern. See Village Code Section 91.15(A).

Evidence was presented that the storage tanks were "state of the art" and comply with all applicable rules and regulations. However, the Village deemed evidence of the considerable risks posed by the tanks to outweigh the evidence about the tanks' features and compliance with regulations. Indeed, the exercise of due care by the owner does not constitute a defense where the annoyance at issue poses a substantial risk of harm to those in the vicinity. See *Sarraillon v. Stevenson*, 153 Neb. 182, 43 N.W.2d 509 (1950). See, also, *Cline v. Franklin Pork, Inc.*, 219 Neb. 234, 361 N.W.2d 566 (1985); *Omega Chem. Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997).

The Nebraska Supreme Court in *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783, 157 N.W.2d 394 (1968), affirmed the district court's entry of a permanent injunction in favor of the city against the defendant, enjoining it from operating an anhydrous ammonia fertilizer distribution business on property adjoining the city limits. The court noted that the

proposed business is a lawful one and that generally a legitimate business enterprise is not a nuisance per se. The court went on to state:

> This does not mean, however, that it may not become a nuisance in fact. A legal and proper activity may be a nuisance in fact simply because of its location. The selection of a place of business is not necessarily left to the owner alone. That subject is often a matter of both private and public concern. [Citation omitted]. Also, a legitimate business may become a nuisance by reason of the conditions implicit in and unavoidably resulting from its operation.

*City of Syracuse*, 182 Neb. at 789, 157 N.W.2d at 398-99. The court noted the evidence regarding the proximity of the business to the city and the potential safety risks involved, finding that the trial court did not err in concluding that the facility constituted a nuisance. See also, *Johnson v. Knox Cty. Partnership*, 273 Neb. 123, 728 N.W.2d 101 (2007).

In the instant case and based upon the record, we cannot say that the trial court erred in finding sufficient relevant evidence to support the Village's denial of the building permit on the basis that the anhydrous ammonia tanks constituted a nuisance. It is not for this court to reweigh the evidence, make independent findings of fact, or substitute its own judgment when the agency decision was supported by sufficient evidence and not arbitrary or capricious. See *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004); *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012). The Board's finding that the storage tanks amounted to a nuisance was supported by sufficient evidence and was not arbitrary or capricious. Therefore, this court will not disturb this decision on appeal.

The Andrews' third assignment of error is without merit.

### 5. INADEQUATE PROTECTION FROM LEAK

The Andrews assert that the district court erred in concluding that sufficient evidence supported the Village's determination it lacked adequate resources to protect against an anhydrous ammonia gas leak.

Upon our review, we find sufficient relevant evidence in the record supporting the Board's determination that the Andrews' safety plan relies upon the Nemaha Rural Fire District and county sheriff as the first responders to any leak. Further, the record supports the conclusion that the Village lacks adequate protection, facilities, manpower, or resources to adequately protect against a large anhydrous ammonia leak, with the potential for physical harm upon the local residents.

Throughout this case, the Village expressed concern to the Andrews that its rural fire department was ill equipped to handle an accidental anhydrous ammonia release and protect its citizens, based on the small size and limited resources of the community. The record confirms the validity of this concern. The fire district consists of only volunteer firefighters, and there is no evidence that the Andrews or anyone from the Village have the proper equipment or training to properly respond to a release and prevent a potential disaster. Further, the safety plan does not identify any employees or trained personnel to operate or continuously maintain the storage tanks.

The safety review plan prepared by Barnes and offered by the Andrews, and the emergency response plan and hazard review checklist contained therein, essentially placed responsibility upon the Village to protect against the effects of a leak. The safety review lacked sufficient risk management planning and a concrete safety plan, and its hazard review checklist was incomplete. There was no evidence of emergency training by the Andrews, who are listed as emergency contacts within the safety review. The emergency response plan listed the fire district and county sheriff as designated first responders. The emergency plan notes that in the event an anhydrous ammonia release cannot be stopped using normal protective equipment, "only trained emergency responders equipped with hazmat suites and supplied air should attempt to control release." Evidence from both the ANSI K61.1 and safety review show that extensive protective equipment is necessary for a safe cleanup of anhydrous ammonia vapor. Lastly, there was a question whether the storage tanks were adequately insured. The lack of adequate safeguards for Village residents was a major consideration before the Board in its nuisance decision.

The inability to protect against a disaster "endangers the comfort, repose, health, [and] safety of others," "renders other persons insecure in life or the use of property," and "interferes with the comfortable enjoyment of life and property" in the Village. See Village Code Section 91.15(A).

The Andrews' fourth assignment of error is without merit.

## 6. VALIDITY OF ORDINANCE 2014-1

The Andrews argue that Ordinance 2014-1 was not validly enacted, and should not be considered in support of the Board's decision.

As previously discussed, we have limited our review to whether the Board's decision that the storage tanks amounted to a nuisance was proper. Therefore, this court need not address the validity of Ordinance 2014-1. As determined above, sufficient relevant evidence existed that the storage tanks amounted to a nuisance, without reference to this ordinance.

## 7. DENIAL OF BUILDING PERMIT

The Andrews allege that the district court erred in failing to direct the Village to issue a building permit for the storage tanks. The Andrews argue that because the evidence shows the tanks were not a nuisance, a building permit should have been issued.

Because the storage tanks were found to be an "unsafe building," in accordance with Section 150.30, and a "nuisance," in accordance with Section 91.15, the Board denied the building permit application in accordance with Section 150.01. Section 150.01 provides that if an applicant's building permit application is not found to be in conformity with Chapter 150 (Building Regulations) and all applicable ordinances, no permit will be issued.

As discussed throughout this opinion, the Board's determination that the storage tanks amounted to a nuisance was supported by sufficient relevant evidence. Therefore, the Board properly denied the building permit pursuant to Section 150.01.

The Andrews' final assignment of error is without merit.

## VI. CONCLUSION

Upon our review, we find the district court did not err in denying the Andrews' petition in error, based upon its finding that sufficient relevant evidence supported the Village's decision to deny the building permit because the storage tanks amounted to a nuisance. Accordingly, we affirm.

AFFIRMED.