from December 1, 2009, through November 30, 2010, and prospective support from December 1, 2010, to the time of the new trial.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

———————————

DIANE S. GLANTZ, APPELLANT, V.
MICHELLE DANIEL, APPELLEE.
___ N.W.2d ___

Filed July 30, 2013.    No. A-12-673.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court resolves independently of the trial court.
2. **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
3. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
4. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.
5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues.
6. **Courts: Judgments.** In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.
7. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.
8. **Moot Question.** As a general rule, a moot case is subject to summary dismissal.
9. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.
10. ____: ____. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question

presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.

11. **Words and Phrases.** As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.

12. **Statutes: Intent: Words and Phrases.** While the word "shall" may render a particular statutory provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done.

13. **Statutes.** There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions.

14. ____. If a prescribed duty is essential to the main objective of a statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to ensure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.

15. **Criminal Law: Time.** The 5-day time requirement specified in Neb. Rev. Stat. § 28-311.09(7) (Reissue 2008) for requesting a hearing is not essential to accomplishing the main objective of Nebraska's stalking and harassment statutes.

16. **Criminal Law: Judgments: Time.** The purpose of protecting stalking and harassment victims is accomplished by allowing a court to promptly enter an ex parte protection order upon the filing of a petition.

17. **Criminal Law: Statutes.** Nebraska's stalking and harassment statutes are given an objective construction, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis.

18. **Criminal Law: Judgments.** Under Nebraska's stalking and harassment statutes, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

No appearance for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

Diane S. Glantz appeals after the district court for Douglas County dismissed an ex parte harassment protection order previously entered in her favor against Michelle Daniel. Although this appeal has become moot, we determine that the issue on appeal regarding statutory construction falls within

the public interest exception to the mootness doctrine. We hold that the requirement in Neb. Rev. Stat. § 28-311.09(7) (Reissue 2008) to request a hearing within 5 days of service of the ex parte protection order is directory rather than mandatory. We therefore conclude that the district court did not err when allowing the show cause hearing to proceed despite Daniel's request for hearing having been filed outside of the 5-day period. Additionally, the district court did not err in concluding the evidence was insufficient to support the issuance of the protection order. Accordingly, we affirm the dismissal of the protection order petition and ex parte harassment protection order.

## FACTUAL BACKGROUND

On June 18, 2012, Glantz filed a form petition and affidavit for a harassment protection order against Daniel pursuant to § 28-311.09. Daniel is the current girlfriend of Ron Spigner, Glantz' ex-husband. In her affidavit in support of the petition, Glantz alleged that Daniel had undertaken a series of harassing acts toward her. First, Glantz stated that Daniel appeared at Glantz' divorce hearing on June 15. Glantz alerted the bailiff to Daniel's presence, and the sheriff accompanied Glantz to her car at the conclusion of the hearing. Next, Glantz alleged that she suspected Daniel had "dumped" sugar into Glantz' car's gas tank on June 14 to prevent Glantz from attending upcoming court hearings. Glantz also alleged that on or about May 19, Spigner strangled her and then Daniel drove Spigner away before the police arrived. Glantz claimed that in another incident about a week earlier, she encountered Spigner and Daniel together in a parking lot. During this encounter, Glantz observed Daniel trying to "aggressively get out of [Daniel's] car" and was afraid Daniel was going to hurt her. Glantz also alleged that she and Daniel exchanged a series of text messages and that some of the later messages became offensive. Finally, Glantz alleged that she believed Daniel had keys to her apartment and car.

On June 18, 2012, the district court entered an ex parte harassment protection order. On that same day, the Lancaster County sheriff's office personally served Daniel with the

petition and affidavit. Daniel filed a request for hearing on June 27. On June 28, the district court ordered that a show cause hearing be held on July 10.

At the July 10, 2012, hearing, Glantz appeared with counsel while Daniel appeared pro se. At the outset of the hearing, Glantz' attorney objected to the hearing's proceeding as scheduled. Glantz' attorney argued that § 28-311.09(7) required the request for hearing to be filed within 5 days of service and that Daniel's request, filed 9 days after service, was not timely. Because Daniel filed her request for hearing outside the 5-day period, Glantz argued that the court should have concluded the hearing at that point, affirming the ex parte order.

When considering this argument, the district court questioned whether Glantz was prejudiced by the hearing's proceeding as scheduled. Glantz' attorney claimed that parties are entitled to rely on the rules, but conceded that his client was not otherwise prejudiced. Finding that Glantz suffered no prejudice from a time extension, the district court overruled the objection. In so ruling, the district court also noted that judicial discretion allowed granting additional time for requesting the hearing.

Thereafter, Glantz testified regarding the allegations in her petition. While the majority of Glantz' testimony was essentially a restatement of the allegations contained in her petition, she gave an expanded account of her text message conversation with Daniel. Glantz testified that over a series of approximately 80 text messages, Daniel stated that she had been in a relationship with Spigner for a year, that she was 4 weeks pregnant, and that Spigner was using Glantz only for a place to live. Glantz also testified that some name calling occurred during this text message conversation. However, she stated that the messaging was not violent or threatening.

Glantz also testified about other suspicious activity that occurred after she petitioned the court for a protection order. Glantz could not confirm that Daniel was involved in this activity, but believed that strange events were taking place around her apartment. Daniel declined to conduct any cross-examination.

After Glantz' testimony, Daniel was sworn and testified. During her brief testimony, Daniel stated that she did not want to be involved with Glantz and that she had straightened out her life after being released from prison on parole. Daniel admitted to attending the divorce hearing, but stated that she attended only because Spigner was unable to attend due to his incarceration. Daniel also testified that Glantz had initiated contact with her on various occasions and had even contacted Daniel's parole officer. Daniel denied "dump[ing]" sugar in Glantz' car's gas tank and denied ever threatening Glantz.

At the conclusion of the parties' testimony, the district court determined that it would not issue a harassment protection order or continue the ex parte order. While explaining its ruling, the court emphasized that issuing a protection order could have serious consequences on Daniel's parole status.

Glantz appeals the district court's dismissal of the ex parte protection order.

## ASSIGNMENTS OF ERROR

Glantz assigns, summarized and restated, that the district court erred in allowing the show cause hearing to proceed after Daniel failed to request the hearing within the 5-day period specified in § 28-311.09(7). Glantz also contends that the evidence adduced at the hearing supported the affirmance of the ex parte protection order.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, which an appellate court resolves independently of the trial court. See *State v. Graff*, 282 Neb. 746, 810 N.W.2d 140 (2011).

[2] A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id*.

[3,4] Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. *Dowd Grain Co. v.*

*County of Sarpy*, 19 Neb. App. 550, 810 N.W.2d 182 (2012). When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Id.*

## ANALYSIS

*Mootness.*

[5,6] Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues. *Muzzey v. Ragone*, 20 Neb. App. 669, 831 N.W.2d 38 (2013). In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *Professional Firefighters Assn. v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011). Therefore, we must first determine whether the expiration of the time that the protection order would have been in effect, had it been extended, renders this appeal moot.

[7,8] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Muzzey v. Ragone, supra*. As a general rule, a moot case is subject to summary dismissal. *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009).

[9] The ex parte protection order in the present case was entered on June 18, 2012, and, had it been extended, would have been effective until June 18, 2013. Thus, the issues presented in this appeal have ceased to exist. However, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000); *Gernstein v. Allen*, 10 Neb. App. 214, 630 N.W.2d 672 (2001).

[10] When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. *Id*. Applying these factors to this case, we conclude this matter falls within the public interest exception. Because this case involves the interpretation of statute, it is undoubtedly a public question. Additionally, the fact that there is no previous interpretation of the statute's time limitation for requesting a hearing leads us to conclude that this decision will provide valuable guidance to the lower courts. Finally, due to the multitude of harassment protection order cases filed in Nebraska, we believe a similar situation is likely to arise in the future.

Thus, although we recognize that the issue of whether the ex parte harassment protection order should have been extended is now moot, we find the public interest exception to the mootness doctrine applies, permitting us to address the merits of this case.

*Timeframe for Requesting Hearing
Under § 28-311.09(7).*

On appeal, Glantz renews her argument that the plain language of § 28-311.09(7) requires a respondent to an ex parte protection order to request a hearing no later than 5 days after receiving service. Section 28-311.09(7) provides in pertinent part:

Any order issued under subsection (1) of this section may be issued ex parte without notice to the respondent if it reasonably appears from the specific facts shown by affidavit of the petitioner that irreparable harm, loss, or damage will result before the matter can be heard on notice. . . . If the respondent wishes to appear and show cause why the order should not remain in effect for a period of one year, he or she shall affix his or her current address, telephone number, and signature to the form and

return it to the clerk of the district court within five days after service upon him or her.

Based on her reading of this statute, Glantz contends that the word "shall" mandates that any hearing request be made within 5 days.

[11-14] In addressing this argument, we begin by reviewing various principles of statutory construction. As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *State v. Hense*, 276 Neb. 313, 753 N.W.2d 832 (2008); *Hendrix v. Sivick*, 19 Neb. App. 140, 803 N.W.2d 525 (2011). See, also, Neb. Rev. Stat. § 49-802(1) (Reissue 2010) (when word "shall" appears, mandatory or ministerial action is presumed). Nonetheless, while the word "shall" may render a particular statutory provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *Hendrix v. Sivick, supra*. There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005); *State v. Donner*, 13 Neb. App. 85, 690 N.W.2d 181 (2004). To aid in these situations, the Nebraska Supreme Court has provided the following direction:

> "'If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to [en]sure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.'"

*State v. $1,947*, 255 Neb. 290, 297, 583 N.W.2d 611, 616-17 (1998) (quoting *Matter of Sopoci*, 467 N.W.2d 799 (Iowa 1991)).

In applying the above principles, Nebraska appellate courts have found certain statutory time limitations to be directory. For example, in *State v. $1,947, supra*, the Nebraska Supreme Court found the time limitations in the forfeiture statute, Neb.

Rev. Stat. § 28-431(4) (Reissue 1995), to be directory. Finding that the purpose of the statute was to ensure that forfeiture of property or money used in drug transactions was consistent with the requirements of due process, the court concluded that the statute's time limitations were not central to this purpose. *State v. $1,947, supra.*

In *Forgey v. Nebraska Dept. of Motor Vehicles*, 15 Neb. App. 191, 724 N.W.2d 828 (2006), this court determined that the time limitation set by Neb. Rev. Stat. § 60-498.01(2) (Supp. 2003) was directory. Section 60-498.01(2) stated that an arresting officer "shall within ten days" forward a sworn report to the director of the Department of Motor Vehicles. We concluded that the statute's language was directory because the failure to strictly adhere to that time limitation did not interfere with the statute's purpose of protecting the public by quickly removing drunk driving offenders from the road. *Forgey v. Nebraska Dept. of Motor Vehicles, supra.* We also based that decision on the fact that § 60-498.01(2) did not attach any sanction to an officer's failure to file a report within the 10-day period. *Forgey v. Nebraska Dept. of Motor Vehicles, supra.* In *Thomsen v. Nebraska Dept. of Motor Vehicles*, 16 Neb. App. 44, 741 N.W.2d 682 (2007), we similarly concluded that the time limitation in § 60-498.01(3) (Reissue 2004) was also directory.

Similar reasoning has also been applied to time limitations in juvenile cases and mental health proceedings. In *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996), the Nebraska Supreme Court determined that absolute discharge from a delinquency petition is not statutorily mandated when a juvenile is not adjudicated within the required time period. In *In re Interest of Brandy M. et al.*, the court concluded that the essence of the juvenile statutes was to protect the children's best interests and that failure to comply with the time limitations did not interfere with this purpose. In *In re Interest of E.M.*, 13 Neb. App. 287, 691 N.W.2d 550 (2005), this court concluded that statutory language requiring a mental health hearing within 7 days for any person held in custody was directory.

For the sake of a complete discussion, we are also mindful of decisions adopting the opposite result. For example, in *State on behalf of Minter v. Jensen*, 259 Neb. 275, 609 N.W.2d 362 (2000), the Nebraska Supreme Court found mandatory the provision of the Nebraska Fair Housing Act directing the Attorney General to file an action within 30 days of election by a complainant, respondent, or aggrieved person to have the claim decided in a civil action. See Neb. Rev. Stat. § 20-340(1) (Reissue 2012). The court analyzed various sections of the act establishing deadlines for certain actions, some of which provided for procedures to allow action beyond the statutorily established deadline. The court determined that no such exception or procedure was provided in § 20-340. The court found that the time limitation in § 20-340(1) was essential to accomplishing one of the principal purposes of the act, which is to "promptly advance the determination of claims, and ensure that all parties are advised of the posture of the case and the steps necessary for them to protect their own interests." *State on behalf of Minter v. Jensen*, 259 Neb. at 281, 609 N.W.2d at 367. The court further concluded that because the 30-day limitation is essential to the purpose of the statute, it does not fall within the exception to the general rule that the word "shall" is considered mandatory and inconsistent with the idea of discretion. *Id*.

In *Stoetzel v. Neth*, 16 Neb. App. 348, 744 N.W.2d 465 (2008), this court considered the 10-day time period for submitting a sworn report under § 60-498.01(5)(a) and concluded the time period was mandatory. In that decision, we distinguished our prior cases *Forgey v. Nebraska Dept. of Motor Vehicles*, 15 Neb. App. 191, 724 N.W.2d 828 (2006), and *Thomsen v. Nebraska Dept. of Motor Vehicles*, 16 Neb. App. 44, 741 N.W.2d 682 (2007), wherein we held that similar time provisions for submitting a sworn report under § 60-498.01(2) and (3) were directory. First, § 60-498.01(5)(a) differs from the other sections in that it provides the procedure in cases where the results of a chemical test are not available to the arresting officer while the arrested person is in custody and the notice of revocation has not been served. In these situations, the arrested person does not receive notice of the revocation

until after the Department of Motor Vehicles has received a sworn report from the arresting officer. Section 60-498.01(2) and (3), in contrast, provides that verbal notice be given to the arrested person of the intention to immediately confiscate and revoke the operator's license. Next, § 60-498.01(5)(a) contains explicit language that "[i]f the sworn report is not received within ten days [after receipt of the results of the chemical test], the revocation shall not take effect." This additional language is not contained in § 60-498.01(2) and (3). We concluded that this additional, explicit statutory language and the need for prompt notice of license revocation proceedings when the chemical test results are not available at the time of arrest required the time provision of § 60-498.01(5)(a) to be mandatory. *Stoetzel v. Neth, supra*.

[15,16] Based on our review of the statutory construction principles and the cases cited above, we conclude that the 5-day time requirement specified in § 28-311.09(7) for requesting a hearing is not essential to accomplishing the main objective of Nebraska's stalking and harassment statutes. Neb. Rev. Stat. § 8-311.02(1) (Reissue 2008) provides the purpose of those laws:

> It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

The purpose of protecting stalking and harassment victims is accomplished by allowing a court to promptly enter an ex parte protection order upon the filing of the petition. See § 28-311.09(7). Upon the entry and service of the ex parte order, the respondent is prohibited from interacting with the petitioner and remains so restrained through the time prior to any requested hearing. Consequently, the time limit for filing a request for hearing does not affect the immediate protections afforded to stalking or harassment victims. Further, § 28-311.09 does not impose any sanction for failing to request a hearing within the period. For these reasons, we

conclude that the requirement in § 28-311.09(7) to request a hearing within 5 days of service of the ex parte order is directory rather than mandatory.

Having found the time limitation in § 28-311.09(7) to be directory, we turn to the particular facts of this case and a consideration of whether Glantz was prejudiced by the delay. See *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998). Here, we observe that Glantz received the protections provided under the ex parte order throughout the time preceding the hearing. Further, Daniel's request for a hearing was filed 9 days after service, and thus, the delay was only 4 days. Finally, Glantz' attorney stated that Glantz was not prejudiced by the late request. Glantz was given full opportunity to present evidence in support of her request for the protection order and did so. Therefore, we conclude that even though Daniel did not timely request a hearing, Glantz suffered no prejudice thereby and the district court did not err in ordering and holding a show cause hearing.

*Sufficiency of Evidence.*

Glantz also contends that she adduced sufficient evidence to establish that Daniel engaged in an intimidating course of conduct. Glantz argues that the court ignored the evidence presented at the hearing and improperly based its dismissal on the collateral consequences that a protection order might have on Daniel's parole.

[17,18] In order to satisfy the definition of harassment, Glantz must prove a course of conduct. Section 28-311.02(2) provides in relevant part:

> (a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;
>
> (b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or

> telephoning, contacting, or otherwise communicating
> with the person.

In analyzing § 28-311.02, the Nebraska Supreme Court has concluded that Nebraska's stalking and harassment statutes are given an objective construction and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id*.

Our review of the record shows that Glantz testified that Daniel committed a series of acts that Glantz found intimidating. However, some of Glantz' testimony related to her suspicions and belief that Daniel had taken certain action against her, but Glantz was unable to adduce any confirming evidence that Daniel was in fact the actor. While Daniel was present at Glantz' divorce hearing, Glantz did not testify to any other conduct by Daniel at that time that would amount to harassment under the statute. Further, the incident involving Daniel's "aggressively get[ting] out of [Daniel's] car" did not involve any threat made by Daniel against Glantz. Finally, Glantz' own testimony revealed that she did not consider the text message conversation with Daniel to be threatening.

As stated above, we review the issuance or dismissal of a protection order de novo on the record. Additionally, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012); *Cloeter v. Cloeter*, 17 Neb. App. 741, 770 N.W.2d 660 (2009). Although the district court was mindful of the collateral consequences an adverse ruling could potentially have on Daniel's parole status, we do not agree that the possibility of collateral consequences was the sole impetus for the court's decision in the case. The court discussed the conflicting testimony of the parties and concluded that continuation of the protection order was not necessary.

After our de novo review of the record, and giving weight to the district court's observation of the conflicting testimony, we conclude that the district court's decision to dismiss the protection order petition was not in error.

## CONCLUSION

Because of our conclusion that the time requirement specified in § 28-311.09(7) is directory, the district court did not err in holding a show cause hearing despite Daniel's untimely filing. Additionally, the district court did not err in dismissing Glantz' protection order petition and the ex parte order.

Affirmed.