IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

MOULTON V. MOULTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHERYL L. MOULTON, APPELLEE AND CROSS-APPELLANT,

V.

KYLE A. MOULTON, APPELLANT AND CROSS-APPELLEE.

Filed October 2, 2018.    No. A-17-948.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Daniel Wasson, of High & Younes, L.L.C., for appellant.

Justin A. Roberts, of Lustgarten & Roberts, P.C., for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

I. INTRODUCTION

The marriage of Cheryl L. Moulton and Kyle A. Moulton was dissolved by consent decree in January 2013. Each party subsequently filed an application or motion for an order to show cause in the district court for Sarpy County; both pleadings were taken up by the court at the same hearing. Kyle claimed that Cheryl refused to allow him parenting time with his children as ordered in the decree. The district court concluded Kyle failed to meet his burden of proof and denied his application. Cheryl claimed that Kyle was not paying her the military retirement benefits she was entitled to under the decree and that he was not paying his share of the children's medical bills. She also claimed Kyle made disparaging comments about her to their children. The district court concluded Kyle was not in contempt with regard to the disparaging remarks, but was in contempt with regard to his military retirement and his obligation on the children's medical bills. Kyle appeals and Cheryl cross-appeals. As to matters over which we have jurisdiction, we affirm.

- 1 -

## II. BACKGROUND

When Cheryl and Kyle were divorced in January 2013, they had agreed to joint legal custody of their two daughters (ages 14 and 15 at the time). Kyle was in the military, living in North Carolina, and Cheryl and the children were living in Nebraska. The parties agreed Cheryl would have physical custody of the children, subject to Kyle's reasonable parenting time as set forth in the parenting plan attached to and incorporated into the decree. Also relevant to this appeal, Cheryl was awarded $1,200 per month from Kyle's disposable military retirement pay, and Kyle was ordered to pay 90 percent of the uninsured health care expenses for the children once Cheryl paid the first $480 in such expenses per child per year.

On November 3, 2016, Kyle filed a pro se "Affidavit and Application for Order to Show Cause (Visitation)." He claimed that Cheryl had willfully failed and refused to allow him parenting time with his children as ordered by the court on various dates in 2013 through 2016.

On November 11, 2016, Cheryl filed a "Motion to Show Cause." She claimed that Kyle began receiving his retirement in January 2016 but failed to notify her or provide her with the $1,200 per month she was owed from January through September. Cheryl also claimed that Kyle had willfully failed to pay his portion of the medical bills for the children and that Kyle had been disparaging her to the children on a regular basis.

Kyle then filed, through counsel, an "Application and Affidavit for Show Cause" on January 24, 2017. He claimed Cheryl willfully and contumaciously violated the decree by filing bankruptcy and negatively affecting Kyle on debts for which he was to be held harmless. This application was denied by the district court in an order entered January 26. That application is not at issue in this appeal.

The parties appeared before the court on February 28, 2017, on each party's contempt pleading. The evidence presented will be discussed as necessary in our analysis to address the errors assigned by the parties. The district court entered an order on April 18, in which the court denied Kyle's application (regarding parenting time issues). As to Cheryl's motion, the court noted there were three issues to be addressed: military retirement, disparagement, and medical bills. The court found Cheryl did not meet her burden of proof with regard to the disparagement matter, but found the evidence did establish that Kyle had failed to pay Cheryl the portion of his military retirement she was awarded pursuant to the parties' divorce decree and failed to pay his portion of the children's medical bills. Accordingly, the court found that Kyle was in willful and contumacious contempt of the decree with respect to military retirement and medical bill payments, and ordered him to appear for a final dispositional hearing on July 10. That hearing was subsequently continued to August 4, at which time further exhibits were received and counsel for both parties made arguments. Evidence from that hearing will be set forth as necessary in our analysis of the assigned errors.

On August 11, 2017, the district court entered an "Order (Disposition and Purge Plan)" stating that a warrant would issue for Kyle on February 5, 2018, for confinement in the Sarpy County jail for 60 days, but execution of the jail sentence would be stayed so long as Kyle complied with the purge plan. The purge plan required Kyle to pay to Cheryl $5,420.50 for unreimbursed medical bills and $9,600 for retirement benefits. The total amount of $15,020.50 was to be paid in

monthly installments of $2,503.42 starting September 1, 2017, until paid in full. Kyle appealed on September 1; Cheryl has cross-appealed.

## III. ASSIGNMENTS OF ERROR

Kyle assigns, restated, that the district court erred in (1) failing to find Cheryl in contempt for denying him parenting time, (2) finding him in contempt regarding the military retirement funds and medical bills, and (3) its determination of the amount owed on medical bills.

Cheryl assigns on cross-appeal that the district court abused its discretion by (1) failing to find Kyle in contempt for making disparaging remarks about her in the presence of their children and (2) failing to order Kyle to pay her attorney fees.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Id*.

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id*.

## V. ANALYSIS

### 1. JURISDICTION

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *McCullough v. McCullough, supra*. Under Nebraska law, an order of contempt in a postjudgment proceeding to enforce a previous final judgment is properly classified as a final order. See *id*. In terms of Neb. Rev. Stat. § 25-1902 (Reissue 2016), a contempt order affects a substantial right and is made upon a summary application in an action after judgment. *McCullough v. McCullough, supra.*

In the present case, each party filed a separate contempt action against the other; both parties adduced evidence on their respective claims at the February 28, 2017, hearing. In its April 18 order, the district court found that Kyle failed to meet his burden of proof on his contempt action against Cheryl, in which Kyle claimed Cheryl had denied him certain parenting time. The April 18 order stated, "IT IS THEREFORE ORDERED AND ADJUDGED that [Kyle's] Application to Show Cause is without merit and is denied." There is no question the April 18 order disposed of all matters raised by Kyle in his separately filed contempt action. Accordingly, the order was final as to Kyle's contempt action against Cheryl. Since no appeal was filed within 30 days of the April 18 order, we are without jurisdiction to consider Kyle's first assigned error related to the court's denial of his contempt action against Cheryl. See *Belitz v. Belitz*, 21 Neb. App. 716, 842 N.W.2d 613 (2014) (custody modification and contempt action were tried together but constituted two separate pleadings and presented separate issues; initial order disposing of custody

issues was immediately appealable, and therefore appeal filed after contempt orders were later entered rendered appeal timely as to contempt orders but untimely as to earlier custody modification order).

On the other hand, we do have jurisdiction over all matters related to Cheryl's contempt action against Kyle. As to her action, the district court concluded she raised three issues, namely, military retirement benefits, disparagement matters, and medical bill obligations. The court found Cheryl did not meet her burden of proof with regard to her disparagement allegations, but found Kyle in willful and contumacious contempt with respect to the military retirement and medical bill obligations and scheduled those issues for a later final dispositional hearing. That hearing took place on August 4, 2017, and the court entered an "Order (Disposition and Purge Plan)" on August 11. Accordingly, Cheryl's contempt action against Kyle was not final until the disposition order was entered on August 11. See *In re Interest of Karlie D.*, 19 Neb. App. 135, 809 N.W.2d 510 (2011) (when court makes findings of contempt in contempt proceeding, but imposes no sanction, there is no final order from which to appeal). See, also, *Belitz v. Belitz, supra* (although two separate orders were entered related to issues raised in one contempt application, issues were not appealable until court disposed of all claims raised in application). Since Kyle's September 1 notice of appeal was filed within 30 days of the August 11 final disposition order on Cheryl's contempt action, we have jurisdiction to review all issues arising from that action, including Cheryl's cross-appeal.

## 2. CONTEMPT PRINCIPLES

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such an act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *House v. House*, 24 Neb. App. 595, 894 N.W.2d 362 (2017). Willful means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. It is the complainant's burden to prove civil contempt by clear and convincing evidence. *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

There are no issues of law raised in the present appeal. We will therefore review the trial court's factual findings for clear error, and we will review the trial court's determinations of contempt and the imposed sanction for an abuse of discretion. See *McCullough v. McCullough, supra*.

## 3. MILITARY RETIREMENT

The provision of the January 28, 2013, decree related to Kyle's military retirement states, in relevant part, that Cheryl "is awarded $1,200 per month, in a fixed dollar amount, of [Kyle's] disposable military retired pay." It also states:

> [Cheryl] may elect to receive such award directly from Defense Finance and Accounting Service (DFAS), so long as it is in a $1,200 per month fixed dollar amount form. If [Cheryl] is married on her 65th birthday, or marries anytime subsequent thereto, this retirement pay shall cease. If [Kyle] dies, this retirement pay shall cease.
>
> The Parties recognize that [Kyle] is still on active duty and may at some point in the future elect to receive a portion of his retirement benefits via disability through the Veteran's Administration. The Parties agree and the Court orders that [Kyle] has a duty not

to take any action that results in a reduction to [Cheryl's] fixed dollar amount of $1,200.00. If [Kyle] does anything which results in such a reduction, he shall reimburse her in an amount equal to any such reduction.

Another provision of the decree states,

> Each party shall execute any documents or deeds requested by the other to carry out the terms of the property settlement agreement. The decree shall act as a conveyance of all property to be transferred by the decree and property settlement agreement just as if the title, document, deed, or other necessary paperwork were actually signed by the transferring party and delivered and filed with the appropriate authority.

In Cheryl's "Motion to Show Cause," she claimed that Kyle began receiving his retirement in January 2016 but failed to notify her or provide her with the $1,200 per month owed to her from January through September. At the February 28, 2017, hearing on her contempt motion, Cheryl testified that she only learned about Kyle's retirement when she tried to make a doctor's appointment for one of the daughters and was told the insurance had changed due to "retirement insurance." According to Cheryl, when she asked Kyle about the retirement money owed to her from earlier in the year, Kyle told her it was "none of [her] business" and he said that they had agreed she would not start receiving those retirement payments until her spousal support was finished. Cheryl testified that she started receiving her $1,200 per month of Kyle's military retirement in October 2016. Kyle offered no testimony in response to Cheryl's assertions, although he did testify that his "final day in uniform was 31 January of 2016," and therefore his first day of retirement started on February 1.

The district court found that Kyle willfully and contumaciously failed to pay Cheryl the portion of his military retirement she was awarded under the decree. In the August 11, 2017, final disposition and purge plan order, Kyle was ordered to pay $9,600 in retirement benefits to Cheryl.

Kyle argues that the decree is silent as to his duties regarding the military retirement beyond the admonition to avoid reducing Cheryl's portion by seeking payment through disability. He asserts that there was no obligation placed on him regarding how Cheryl was to receive her portion of the retirement. He states, "Quite frankly, it is difficult to find what part of the Decree Kyle has willfully and intentionally violated." Brief for appellant at 17. He acknowledges that while it may be factually true that Kyle failed to pay Cheryl her portion of the military retirement between February and September 2016, he suggests that "the facts certainly do not establish that such failure was intentional with the knowledge the act violated the Decree." *Id*. He claims there is no obligation placed on Kyle in the decree regarding how Cheryl was to receive her portion of the retirement and there "is little guidance whatsoever on how Cheryl was to receive her portion" other than the clause stating Cheryl "'may elect to receive such award directly from Defense Finance and Accounting Service (DFAS), so long as it is in a $1,200 per month fixed dollar amount form.'" *Id*.

We cannot say the district court abused its discretion in finding Kyle willfully failed to comply with the decree. The decree states that Cheryl "is awarded $1,200 per month, in a fixed dollar amount, of [Kyle's] disposable military retired pay." Once Kyle started drawing his military retirement pay, the decree required that $1,200 of those funds be paid over to Cheryl. Kyle testified

that his "final day in uniform" was January 31, 2016. Exhibit 8 indicates that Kyle started receiving his retirement benefits in February 2016 and a "FORMER SPOUSE" deduction of $1,200 was not started until Kyle's September 2016 retirement check. While Kyle is not wrong in suggesting that Cheryl could have taken affirmative steps to set up direct payments from DFAS, the fact that she did not do so does not change the fact that once Kyle started drawing his retirement pay, the decree required that Cheryl be given her fixed dollar amount share. When Cheryl confronted Kyle about receiving her share, Kyle told her it was "none of [her] business" and that they had agreed he did not have to pay her until her spousal support ended. There is nothing in the decree to support Kyle's response, and his response shows he was making a willful decision to not pay Cheryl her share of the retirement funds he had started to receive.

Based upon our review of Kyle's "Retiree Account Statement" for the months of March through November 2016 (exhibit 8), it is unclear how the district court determined that Kyle owed Cheryl $9,600 in retirement benefits. Based upon the year-to-date amount reflected in the March statement, it is evident Kyle began drawing his retirement pay in February. The withholding for the former spouse deduction of $1,200 did not commence until the September payment. Therefore, Cheryl would have been owed $1,200 per month from February through August, which is 7 months, totaling $8,400. However, Kyle did not assign as error the amount owed or the monthly payment required under the purge plan, and therefore, we affirm the district court's order finding Kyle in contempt for his willful failure to pay Cheryl her court-ordered share of his military retirement pay.

4. MEDICAL BILLS

The provision of the January 28, 2013, decree related to Kyle's obligation to pay medical costs for the children states, in relevant part:

> [Cheryl] shall pay 10% and [Kyle] shall pay 90% uninsured health care expenses incurred for the minor children after [Cheryl] has paid the first $480.00 per child per year in said expenses. . . . Medical expenses include any medical, dental, orthodontia, counseling, therapy, and vision expenses that are not covered by insurance. [Cheryl] shall fax, email, and/or mail [Kyle] proof of the unreimbursed medical expenses she incurs for each minor child by providing him with receipts and, when applicable, the Explanation of Benefits statements, within 10 days of [Cheryl] receiving such bills. [Kyle] shall then have 21 days from the date [Cheryl] provided the billing information to him to reimburse her for his 90% share.

Cheryl testified that Kyle told her he was not going to pay for contact lenses because they were cosmetic. Cheryl claimed that she tried to give Kyle medical bills and that he would just hand them back to her and tell her he was not going to pay for contact lenses. Exhibits 12 through 17 were received and reflected itemized amounts paid for contacts, braces, and glasses for the parties' daughters from 2013 through 2015; supporting documents were attached to each itemization. According to Cheryl, these exhibits represented bills for the children which she tried to give to Kyle more than once, but she finally stopped trying to give them to him because "he would call me and yell at me saying he was not paying those contact lenses because those were just cosmetic." Kyle did not refute this evidence.

The district court found that Kyle willfully and contumaciously failed to pay his portion of the children's medical bills as ordered under the decree. No specific amount was set forth in the April 18, 2017, order; however, we note that the amount due in the bills contained in exhibits 12 through 17 for Kyle's 90-percent portion totals $5,420.50. At the August 4 hearing, Kyle offered his affidavit, in which he claimed he owed $2,394 in medical expenses and was prepared to pay that amount. He averred that "[t]he balance of the expenses claimed by [Cheryl] are for contact lenses," and that the position of his insurance company, Tricare, was that "contact lenses are not necessary," but are "elective and cosmetic." In the August 11 final disposition and purge plan order, Kyle was directed to pay to Cheryl his 90 percent ($5,420.50) of the bills submitted by Cheryl.

Kyle argues that there was no credible evidence that Cheryl complied with the decree in so far as her responsibility to fax, email, or mail Kyle the bills within 10 days of receiving them. He claims that since he only saw his children "approximately 2 times a year," then "[i]ndeed, the bulk of the bills allegedly submitted would have been several months (perhaps years) old by the time hand delivery to Kyle was even feasible." Brief for appellant at 21. He asserts that a "prerequisite to finding [him] in contempt in the instant case is that such medical bills were actually submitted to him." *Id*. at 22. Kyle argues that even assuming Cheryl gave him a bill, "[t]here is virtually no evidence" that she faxed, emailed, or mailed the bill as required to under the decree. *Id*.

The decree requires that Cheryl shall pay 10 percent and Kyle shall pay 90 percent of the uninsured health care expenses incurred for the minor children after Cheryl has paid the first $480 per child per year in such expenses. And it is clear that medical expenses include orthodontia and vision expenses "that are not covered by insurance." The bills submitted by Cheryl were for contacts, braces, and glasses; all of these items would fall under the medical expense requirement for uninsured expenses. And although the decree provides a method and timeframe for Cheryl to submit the bills to Kyle and a timeframe for Kyle to pay them, the lack of compliance with that timeframe by either of them does not change the fact that each is required to pay their designated percentage of those bills. If the parties desired a waiver provision in the event of late submission of the bills, they could have included one in the consent decree, but did not. Further, in the affidavit submitted by Kyle at the August 4, 2017, final hearing, he admitted to owing, and was prepared to pay, $2,394 in medical expenses which he had apparently calculated were those bills which did not include contact lenses. He was unwilling to pay the amount billed for contact lenses. Kyle was ordered to pay 90 percent of any vision expenses not covered by insurance; nothing in the decree excludes contact lenses. We find no abuse of discretion by the district court in finding Kyle in contempt on this issue.

Alternatively, Kyle argues that if this court finds he "willfully and contumaciously defied the court regarding unpaid medical bills, the amount of unpaid bills [he] should be responsible for should be limited to bills pertaining to the contact lenses alone." *Id*. at 23. Kyle claims that Cheryl's contempt motion only alleged the nonpayment of bills for contact lenses, and therefore "he did not have fair notice of the medical bills Cheryl was alleging he did not pay." *Id*. It is true that Cheryl's motion only referred to the bills for contact lenses; however, as noted above, Kyle produced his own affidavit that he owed $2,394 of the bills submitted, which did not include the contact lenses. Therefore, we cannot say the district court abused its discretion by ordering Kyle to pay 90 percent

of all the uninsured medical bills since they included the bills he agreed he owed, plus the bills for contact lenses which he refused to pay but should have paid, as already discussed.

### 5. CHERYL'S CROSS-APPEAL

### (a) Disparaging Remarks

In her cross-appeal, Cheryl claims the district court abused its discretion by failing to find Kyle in contempt for making disparaging remarks about her in the presence of their children. There is language in the parenting plan incorporated into the parties' decree which states:

> The Mother and Father agree that they will assist the minor children in maintaining a positive relationship with the other parent and with other family members. The Mother and Father agree that neither will engage in conduct which tends to disparage the other parent or other family members, which tends to develop or maintain a negative relationship toward the other parent or other family members, or which tends to encourage the minor children to violate this Plan or be uncooperative in implementing it.

In his reply brief, Kyle argues this assigned error is moot because the parenting plan is no longer in effect. He notes that the children were born in 1997 and 1998 and are no longer minor children; thus, the parenting plan "has been terminated" with respect to the children. Reply brief for appellant at 23. We agree. A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of the litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013). See, also, *Kennedy v. Kennedy*, 205 Neb. 363, 367, 287 N.W.2d 694, 696 (1980) (child reached his majority one month before case was heard in appellate court, therefore all disputes concerning his custody became moot and did not require further consideration; "[o]rdinarily, jurisdiction over the custody of a child in a divorce proceeding terminates when the child reaches his majority"). In light of the parties' daughters both reaching the age of majority, matters arising out of the parties' parenting plan are no longer actionable and are now moot.

### (b) Attorney Fees

At the hearing on August 4, 2017, Cheryl submitted her attorney's affidavit showing fees and costs totaling $7,465.98. Kyle argued at the hearing that Cheryl's attorney fee affidavit contained billing for matters unrelated to her contempt action, noting that there was a county court case pending between the parties and that the attorney fees reflected in the affidavit were "quite inflated." The district court's August 11 order did not award either party any attorney fees.

Cheryl claims it "is simply not enough to award [her] the amounts she is owed under the Decree, when the proceedings themselves should have been unnecessary and caused her significant money damages in fees." Brief for appellee at 41.

Reasonable attorney fees can be awarded in a contempt proceeding. See *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Patera v. Patera*, 24 Neb. App. 425, 889 N.W.2d 624 (2017).

Both parties brought contempt actions against the other; neither of which was frivolous simply because relief was not granted in all respects. Each party therefore incurred costs necessitated by their inability to communicate with each other and work through the problems raised in their respective contempt actions. We cannot say the district court abused its discretion by declining to award attorney fees.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's August 11, 2017, order.

AFFIRMED.