IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


AMY E. ON BEHALF OF GRACEN E. V. PATRICK D.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


AMY E. ON BEHALF OF GRACEN E., APPELLEE,

V.

PATRICK D., APPELLANT.


BRANDON E. ON BEHALF OF SAMANTHA E. AND EMERSON E., APPELLEE,

V.

PATRICK D., APPELLANT.


RACHEL M. ON BEHALF OF ELLIE M., APPELLEE,

V.

PATRICK D., APPELLANT.


Filed July 7, 2020.    Nos. A-20-127 through A-20-129.


Appeals from the District Court for Dixon County: BRYAN C. MEISMER, Judge. Affirmed.

Patrick D., pro se.

Kate M. Jorgensen, of Law Office of Kate M. Jorgensen, P.C., L.L.O., for appellees.


MOORE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Patrick D. appeals the Dixon County District Court's order that extended harassment orders issued against him until December 18, 2020. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On December 18, 2019, parents Amy E., Brandon E., and Rachel M. filed petitions and affidavits to obtain harassment protection orders against 41-year-old Patrick on behalf of their respective children: 14-year-old Gracen E.; 14-year-old Samantha E. and 12-year-old Emerson E.; and 14-year-old Ellie M.

Amy's petition and affidavit on behalf of her daughter Gracen alleged that Patrick had engaged in a series of harassing texts to Gracen which began with the following group text sent by Patrick on August 31, 2019, saying: "'You are hereby cordially welcomed into the circle of trust. Such membership is both a [privilege] and an honor,' 'will discuss the membership initiation process at a future time.'" Gracen responded "'OMG I'm scared.'" Amy alleged that after Gracen was added to the group text on August 31, Gracen continued to receive "sexually explicit" and "inappropriate" texts from Patrick including offering alcohol to underage children and making "attempts to isolate the girls from the group to get them alone." Amy expressed concern "that Patrick is grooming these young children for his own purposes." Amy alleged that specific examples of the harassing texts sent by Patrick to Gracen included: (1) On December 3, 2019, Patrick "via text message tried to coerce my 14 year old daughter to go alone with him to get a manicure. When [he] did not receive a response he mimicked an orgasm over text message. 'Oh fuck yes!!' 'Just like that!!!! Keep it up!!!! Gooooooooooood YES!!!' The text messages were discovered on Gracen's phone on December 12th[,] 2019, by her parents." (2) On December 7th, Patrick "offers to throw a party where 'alcohol will flow freely' for the teenage girls. When asked how would one girl get to the party[, Patrick said] 'You can ride with me and your sister.'" (3) On December 11th, Patrick described graphic gay bar names to Gracen such as "'The Bulge,' 'The Toolbox,' and 'Nine Inch Males.'"

Brandon's petition and affidavit on behalf of his daughters Samantha and Emerson alleged that Patrick has been contacting his daughters since early August 2019 and Brandon alleged that in the summer of 2019, Patrick "provided [and] offered alcohol" to both his daughters. Brandon further alleged that Patrick had sent multiple texts to his daughters which concerned "inappropriate behavior" including a text on December 3, when Patrick "sent a text message to his daughters containing an ejaculation emoji alluding to sexual activity."

Rachel's petition and affidavit on behalf of her daughter Ellie alleged that 41-year-old Patrick had been seeking to engage her 14-year-old daughter into "a secret relationship." Patrick sent text messages to Ellie in December 2019 including, "'Ellie, welcome to the circle of trust. Congrats on the win for the blue ballers tonight'"; a text inviting Ellie and her friends to a party with alcohol--"'there's apparently a hoo-ha at my place tonight. You and your crew are invited if you want. Alcohol will flow freely (I didn't say that)'"; and four different text messages with the names of gay bars--"'The Bulge, The Toolbox, Nine Inch Males, [and] Mable Peabody's Beauty Parlor [Chainsaw] Repair Night Club.'"

On December 18, 2019, after reviewing the respective petitions and affidavits, the Dixon County District Court issued three ex parte protection orders. On December 23, Patrick requested

hearings in each of the cases which were all scheduled for January 13, 2020, but subsequently continued to January 27. The court, with the consent of the parties, called all three cases simultaneously because the cases involved the same set of facts.

1. HEARING

During the hearing, the three petitions and affidavits for harassment protection orders were offered and received into evidence. A USB drive containing approximately 900 text messages involving Patrick extracted from Samantha's iPhone and multiple individual images texted by Patrick to the children were also received into evidence.

Also during the hearing, Patrick sought to introduce three exhibits into evidence: one from his girlfriend and one each from his girlfriend's two daughters. Each letter bore a notary signature and stamp. The attorney representing the petitioners objected based upon hearsay, foundation, and due process. Patrick admitted that the individuals that wrote the letters were not parties to the actions, but stated that he was offering the letters because: "They were part of all of these messages. They were at my house whenever the petitioners were at my house. They were involved in all of the group messages." The petitioners' attorney replied: "Then they should be here to testify, Judge. I believe [Patrick] has the power of subpoena, which he used to his advantage, so I would object to these [exhibits]." Although Patrick responded that the parties "can't be here to testify because you guys called Child Protective Services on them, and I can't be near them for 30 days now," he did not present any evidence regarding why the parties were unable to appear. The court stated: "I just don't see how this is relevant if they're not parties to this action. So I'm going to sustain the objection as to relevance and hearsay."

Witnesses testifying at the hearing included the parents--Amy, Brandon, and Rachel; and three of the children involved--Emerson, Samantha, and Gracen.

(a) Testimony Regarding Gracen E.

Amy testified that she filed a harassment protection order on behalf of her 14-year-old daughter Gracen because she felt the text messages that Patrick was sending were "extremely concern[ing,] . . . highly inappropriate, and . . . not conversations that I would ever have with my child."

Fourteen-year-old Gracen testified that she has never been scared of Patrick and, when she sent a text stating she was scared, she was joking. She further testified that Patrick never threatened or intimidated her; he never tried to get her alone and they were never alone; she had never been to his house; and he had never offered her alcohol. However, Gracen stated that Patrick always instigated the text conversations which started in August 2019; she did not ask him to text her; she did not give him her phone number; she did not know how he obtained her phone number; the texts make her uncomfortable; she sometimes felt the texts were inappropriate; she did not reply to his texts very often; and she stated that she would like the texts to stop.

(b) Testimony Regarding Samantha E. and Emerson E.

Brandon testified that he filed for harassment protection orders on behalf of his 14-year-old daughter Samantha and his 12-year-old daughter Emerson after he discovered the inappropriate text messages Patrick was sending to his daughters. Regarding Samantha, Brandon testified that

he felt that Patrick was exposing her to conversations that a 14-year-old should not be hearing, that Samantha does not understand the gravity of what was occurring, and that Samantha is confused by the definition of "inappropriate." Brandon also expressed concerns regarding Patrick texting his 12-year-old daughter.

Fourteen-year-old Samantha testified that Patrick never tried to get her alone with him; she was never alone with him; and he never terrified, threatened, or intimidated her. However, she also testified that she had been receiving text messages from Patrick for at least 4 months. In some of those text messages, Patrick talked to Samantha about purchasing a van which he called a "rape van" and stated that he would "like to take out the back seats and put in mattresses, but [his girlfriend was] not okay with that." Patrick also sent a text that stated, "'I'm looking into acquiring the phone number 800 B-E-N-D-O-V-R for the van, 800 bend over, which is particularly helpful if you ever decide to advertise free prostate exams.'" In response to some of the group text messages, Patrick's girlfriend would text that Patrick's texts were "inappropriate." Samantha testified that she did not think Patrick's text messages were inappropriate. Samantha further testified that she did not feel that it was inappropriate for Patrick to be teasing her about her boyfriends and it did not make her uncomfortable. Patrick also sent Samantha texts referring to "blue ballers" and "Sam, don't think I don't notice you blow me that kiss when you knocked down that number three." Samantha also stated that Patrick often swears in his text messages. Samantha further testified that she does not know how Patrick obtained her phone number but immediately thereafter stated that she could not remember if she gave her number to him. Samantha admitted that she had been to Patrick's home, that he had offered her alcohol on more than one occasion, and that she had accepted alcohol from him.

Twelve-year-old Emerson testified that she was never offered or given alcohol at Patrick's house; that he never threatened her, bullied her, or tried to use force to make her do something; that Patrick never tried to get her alone; and that she has never been alone with him. However, she testified that he terrified her at first and that made her "uncomfortable." She stated that she did not give him her telephone number, she did not know how he obtained it, and she wanted him to stop contacting her.

### (c) Testimony Regarding Ellie M.

Rachel testified that she filed for a harassment protection order on behalf of her 14-year-old daughter, Ellie, because she was worried that Patrick had an unhealthy interest in her child and she wanted Patrick, who was an adult male, to stop texting her teenage daughter.

### 2. DISTRICT COURT ORDERS

On January 27, 2020, the district court entered orders in all three cases providing that the harassment protection orders issued on December 18, 2019, were to remain in effect for a period of 1 year from the date of the original orders.

### III. ASSIGNMENTS OF ERROR

Patrick's assigned errors in each of these consolidated appeals can be consolidated and restated into the following two claims: (1) the district court erred in failing to admit into evidence

three notarized letters and (2) the evidence was insufficient to support the district court's order extending the harassment protection orders.

## IV. STANDARD OF REVIEW

A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010); *Prentice v. Steede*, 28 Neb. App. 423, ___ N.W.2d ___ (2020). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Chavez*, 281 Neb. 99, 793 N.W.2d 347 (2011).

## V. ANALYSIS

### 1. FAILURE TO ADMIT EVIDENCE

First, Patrick claims that the district court erred in failing to admit into evidence three exhibits: one from his girlfriend and one each from his girlfriend's two daughters. The court excluded the letters based upon hearsay and relevance.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2016). See, also, *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. See, Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2016); *State v. Jedlicka, supra*.

In support of his contention that the statements offered were admissible at trial, Patrick argues that in the week prior to trial, Nebraska Child Protective Services showed up to his girlfriend's home to investigate her for being an "unfit parent" because she allowed her children to be around Patrick. Brief for appellant at 17. Because of this investigation, Patrick alleges that a "Child Protective Services agent told [him] that he cannot contact [his girlfriend's two daughters] for 30 days, and they were essentially barred and prevented from testifying at the trial." Brief for appellant at 17-18. Patrick claims that the investigation "was orchestrated by the petitioners as an attempt to block their testimony" and argues that because of this "bar," his girlfriend's and her two daughters' out-of-court statements should have been admitted at trial. *Id*. Patrick does not argue that the statements themselves were not hearsay. We interpret Patrick's argument to be an argument under the residual exception to the hearsay rule.

The residual exception to the hearsay rule is found in Neb. Rev. Stat. § 27-804 (Reissue 2016). Section 27-804(2)(e) contains a catchall provision which allows a statement from an unavailable witness if the statement has "equivalent circumstantial guarantees of trustworthiness" and

> if the court determines that (i) the statement is offered as evidence of a material fact, (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to

provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Section 27-804 is premised upon the unavailability of a witness, and the only definition of unavailability that is pertinent to this case is § 27-804(1)(e), which provides that the declarant is "absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means."

Here, there was no evidence presented regarding why the witnesses were not present (other than Patrick's statement which was not evidence). Further, Patrick did not utilize his subpoena power to compel the presence of those witnesses to appear. Since Patrick did not comply with § 27-804, the letters he sought to introduce as exhibits were hearsay which did not fall within the residual exception to the hearsay rule. Consequently, the district court properly excluded Patrick's proposed exhibits from evidence.

### 2. SUFFICIENCY OF EVIDENCE TO SUPPORT HARASSMENT PROTECTION ORDERS

Second, Patrick contends that the evidence was insufficient to support the district court's orders extending the harassment protection orders.

Neb. Rev. Stat. § 28-311.09 (Reissue 2016) provides in relevant part:

(1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . . . Upon the filing of such a petition and affidavit in support thereof, the court may issue a harassment protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

Although § 28-311.09 was amended on January 1, 2020, the amendment is not applicable to the case at bar. The purpose of § 28-311.09, and the definition of certain terms, are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016), which provides in relevant part:

(1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

(2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:

(a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;

(b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Application of the law governing harassment protection orders has been summarized as follows:

> "Nebraska's stalking and harassment statutes are given an objective construction and . . . the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable [victim] would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id.*"

*Richards v. McClure*, 290 Neb. 124, 132, 858 N.W.2d 841, 847 (2015) (quoting *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013)) (brackets in original).

Here, after conducting a de novo review of the evidence on an objective basis, we find that there was sufficient basis for the district court to support the entry of the harassment protection orders. The evidence established that 41-year-old Patrick was engaged in a course of conduct of texting sexually explicit and otherwise inappropriate content to 12- and 14-year-old girls including, but not limited to, talking about a "rape van," "happy endings," "blue ballers," and inviting the minors to parties where alcohol would be served. Each of those girls testified that they did not provide Patrick with their phone numbers and did not know how he obtained their numbers. Patrick provided alcohol to at least one of the minors. Emerson and Gracen testified that Patrick made them uncomfortable and they wanted the texts to stop. Although Ellie did not testify, her mother testified that she was worried that Patrick had an unhealthy interest in Ellie and she wanted Patrick, who was an adult male, to stop texting her teenage daughter. Finally, although Samantha testified that she did not feel that Patrick's texts were inappropriate and they did not make her uncomfortable, this court views the evidence objectively, not subjectively. Although these children may not have enough context to understand the threat posed here, objectively, Patrick's continued inappropriate texting of Samantha, which in Samantha's instance involved over 900 texts, would be seriously threatening and intimidating to a reasonable victim.

We find that Patrick engaged in a knowing and willful course of conduct directed at Gracen, Samantha, Emerson, and Ellie, and that a reasonable person would be, at a minimum, seriously threatened and intimidated by such conduct. Further, on the record before us, we find that his course of conduct did not serve any legitimate purpose. See § 28-311.02(2)(a) (definition of harass). Accordingly, the evidence was sufficient to issue the harassment protection orders against Patrick and in favor of Gracen, Samantha, Emerson, and Ellie, pursuant to § 28-311.09(1).

## VI. CONCLUSION

Having found that Patrick's assigned error regarding the exclusion of his exhibits fails and based on our de novo review of the record, we affirm the harassment protection order issued by the district court.

AFFIRMED.